## WILBER NATIONAL BANK OF ONEONTA, ADMINISTRATOR, v. UNITED STATES.

No. 210.   Argued December 7, 1934.—Decided February 4, 1935.

*Mr. William Wolff Smith,* with whom *Mr. Frank C. Huntington* was on the brief, for petitioner.

*Mr. Will G. Beardslee,* with whom *Solicitor General Biggs* and *Mr. Wilbur C. Pickett* were on the brief, for the United States.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

July 1, 1927, James Patrick Mahar applied to the United States Veterans' Bureau for reinstatement of $5,000 insurance upon his life, and with the application

sent check for $13.90. The allocation of this sum then suggested by him gives no indication that he thought it sufficient to meet any premium due after August 1st.

September 19, a policy in the usual form issued and was delivered. It showed payment of the monthly premium—$3.95—due July 1st, and that like payment would be necessary on the first of each succeeding month. Also:

" .... This policy takes effect on the first day of July, nineteen hundred and twenty-seven. . . ."

" Premiums are due and payable monthly in advance " and " if any premium be not paid when due, this policy shall cease and become void . . ." but that " a grace of thirty-one days without interest will be allowed during which time the policy will remain in force. . . . This policy, if it has not been surrendered for a cash value, may be reinstated at any time after lapse upon evidence of the insurability of the insured satisfactory to the Director of the United States Veterans' Bureau, and upon the payment of all premiums in arrears, with interest from their several due dates at the rate of five per centum per annum, and the payment or reinstatement of any indebtedness which existed at the time of such default, with policy loan interest."

A letter dated July 29th acknowledging receipt of the check which accompanied the application contained the following clause:

" Important.—Insurance under the application evidenced by the above remittance shall be effective subject to the World War Veterans' Act, 1924, and Regulations . . ."

Neither this letter nor any other notice informed the assured how the $13.90 had been allocated, but under the statute and regulations it sufficed to pay prescribed charges, and two premiums on the $5,000 policy—July 1st and August 1st; also $2.65 for credit on the premium due September 1st.

Two remittances of $3.95 by or for the assured were made to the Bureau November 2nd and December 20th respectively. These were retained, but were not acknowledged until after the assured's death. After issuance of the policy no notice was given the assured concerning payment of premiums, default, or that the policy had lapsed or was about to do so. Apparently the only communications sent prior to his death were the receipt of July 29th, and the policy, delivered September 19th.

Nothing indicates that the Bureau ordinarily sent notices concerning premiums or lapses. We are referred to no statute or regulation which required such a notice. No officer of the Bureau is shown to have had power to reinstate lapsed policies without evidence of insurability.

Mahar became totally incapacitated October 17th, but the Bureau had no notice of this fact. He died the twenty-fourth of December. Payment under the policy was refused upon the ground that it had lapsed because of failure to pay the premium due September 1st. The grace period ended October 2nd.

Petitioner, as administrator of the estate, brought this action in the District Court, Northern District, New York (§ 445, c. 10, Title 38, U. S. C.). It alleged issuance of the policy, that all matured premiums upon the policy had been duly paid, and asked recovery.

According to the provisions of the policy it expired October 2nd. But petitioner claimed, and the District Court ruled, that because the Bureau failed to give notice concerning allocation of the sum forwarded July 1st, failed to give notice of the due dates of the premium or that the policy had or was about to lapse, and retained the two payments of $3.95 each, the United States were estopped to deny liability. It said:

" If the defendant was a private insurance company, I would have no hesitancy in declaring it estopped from

claiming the policy had lapsed for non-payment of premium. . . . The same principle should be applied against the defendant in this case. ' When the United States went into the insurance business, issued policies in familiar form, and provided that, in the case of disagreement, it might be sued; it must be assumed to have accepted the ordinary incidents of suits in such business.' "

Judgment for the petitioner was reversed. The Circuit Court of Appeals held:

" The conditions of the policy relating to premium payments were not met by payment of the premium due September 1, 1927, and the insurance policy therefore expired, counting in the grace period, on October 2, 1927, unless there was a waiver by the appellee. The claim that there was such a waiver cannot be sustained. . . . The law does not permit waiving statutory requirements by the acts of employees of the government. The failure to pay the premiums prior to October 2 resulted in a lapse of the policy which may not now be held to be waived by the conduct of the government's employees."

The cause is here by certiorari granted upon an application which asserts that the questions presented are: First, whether the United States are engaged in the life and disability insurance business, and obligated to observe the same rules in respect of notices, applying premiums and obeying customs that are applicable to competing commercial companies; and Second, whether the United States, in the circumstances shown, are bound by the acts of their agents like other insurance companies and estopped to deny payments because of such acts.

Undoubtedly, the general rule is that the United States are neither bound nor estopped by the acts of their officers and agents in entering into an agreement or arrangement to do or cause to be done what the law does not sanction or permit. Also, those dealing with an agent of the United

States must be held to have had notice of the limitation of his authority. *Utah Power & Light Co.* v. *United States,* 243 U. S. 389, 409; *Sutton* v. *United States,* 256 U. S. 575, 579.

How far, if at all, these general rules are subject to modification where the United States enter into transactions commercial in nature (*Cooke* v. *United States,* 91 U. S. 389, 399; *White* v. *United States,* 270 U. S. 175, 180) we need not now inquire. The circumstances presented by this record do not show that the assured was deceived or misled to his detriment, or that he had adequate reason to suppose his contract would not be enforced or that the forfeiture provided for by the policy could be waived. *Insurance Co.* v. *Eggleston,* 96 U. S. 572; *Phoenix Insurance Co.* v. *Doster,* 106 U. S. 30. The grounds upon which estoppel or waiver are ordinarily predicated are not shown to exist.

The statutes and regulations which govern the War Risk Insurance Bureau we must assume are known by those who deal with it. When issuing a policy the Bureau, so far as shown, did not ordinarily notify the assured of the allocation of the cash payment; there was no custom to give notice of defaults. Here the insured had no right to expect such notices. His policy finally lapsed October 2nd. After that no officer of the Bureau had authority to reinstate it without proof of insurability. The policy so declared.

The assured's health began to decline in September and on October 17th he was permanently and totally disabled, but no notice of this was given. Payments of November 2nd and December 20th were sent when this disability existed. They were received by the Bureau when ignorant of the true situation, and at a time when reinstatement by affirmative action was inadmissible.

Nothing indicates intention by any officer or agent to vary the contract; and we find nothing done or omitted

from which the assured or his representatives could reasonably imply such purpose or intent. The claim of estoppel or waiver is not supported by the facts shown and the questioned judgment must be

*Affirmed.*