## COLEMAN v. UNITED STATES.
### No. 4329.

District Court, W. D. Tennessee, W. D.
Jan. 16, 1937.

John R. Walker, Jr., of Memphis, Tenn., for plaintiff.

Joseph M. Bearman, Asst. U. S. Dist. Atty., of Memphis, Tenn., for United States.

MARTIN, District Judge.

The motion to dismiss this war risk insurance case has been considered carefully on the pleadings, stipulation of counsel, oral arguments, and briefs. The question is whether the action is barred under 38 U.S.C.A. § 445, because the first claim for permanent total disability insurance was filed May 19, 1932, which was, of course, after July 3, 1931.

The pertinent facts are that the soldier, James Tskanes, when discharged from the army on December 10, 1918, had in effect $10,000 of war risk insurance; became totally and permanently disabled from dementia praecox while the insurance was in force; was admitted to a state institution for the insane on September 5, 1922, and later to a government sanitarium, where he died November 11, 1928.

In December, 1927, the plaintiff, George J. Coleman, an attorney at law and Judge Advocate of the America Legion for Shelby county, Tenn., was notified by the Veterans Administration that Tskanes, an ex-soldier, confined in the Western State Hospital for the Insane at Bolivar, Tenn., should have a guardian appointed, and be removed to a government hospital.

Accordingly, Coleman was appointed by a state probate court guardian of Tskanes on December 17, 1927. Shortly thereafter, on December 28, 1927, Coleman requested

Congressman Hubert F. Fisher to ascertain whether his non compos ward had war risk insurance in effect and, if so, in what amount.

On January 25, 1928, the Congressman wrote to the plaintiff, then guardian, as follows:

"Replying to your recent inquiry as to whether or not James Tskanes, veteran of the World War, applied for insurance with the government during his military service, I wish to advise that the Veterans Bureau informs me no record has been found where this soldier ever applied or was issued insurance."

About nine and a half months later, the veteran Tskanes died and the plaintiff, Coleman, was appointed administrator of his estate on December 6, 1928.

Nearly three and a half years later, according to the stipulation of fact, that is, on May 17, 1932, the plaintiff administrator learned that there was an application for war risk insurance signed by Tskanes on file in the Regional Office of the Veterans Administration, Nashville, Tenn. Forthwith, he wrote the Administrator of Veteran Affairs, making formal demand and claim for war risk insurance as administrator of the estate of James Tskanes, on May 19, 1932. This was the first claim filed. The claim was denied June 3, 1935, and this suit was filed June 25, 1935.

The language of the applicable statute of limitation in war risk insurance cases (38 U.S.C.A. § 445) is plain:

"No suit on yearly renewable term insurance shall be allowed under this section unless the same shall have been brought within six years after the right accrued for which the claim is made or within one year after July 3, 1930, whichever is the later date."

■ It is familiar law that statutes of limitation in favor of the sovereign must be strictly construed in its favor. United States v. Arditto (C.C.A.6; Dec. 15, 1936) 86 F.(2d) 787; United States v. Valndza (C.C.A.6) 81 F.(2d) 615; Board v. Commissioner of Internal Revenue (C.C.A.6) 51 F.(2d) 73; Schillinger v. United States, 155 U.S. 163, 15 S.Ct. 85, 39 L.Ed. 108.

■ The United States government has fixed the terms under which it consents to be sued on war risk insurance claims and has not authorized the Veterans Administration or any officer of the government to alter the provisions or waive the limita-

tions imposed. Lynch v. United States (C.C.A.5) 80 F.(2d) 418.

The Court of Appeals for the Fifth Circuit, in its recent well-considered opinion, in Jenkins, Adm'x v. United States (C.C.A.5) 86 F.(2d) 123, decided October 27, 1936, adhered to its decision in the Lynch Case, supra.

The court said:

"The contingency on which the claim was founded, to wit, the death of Berry, occurred July 6, 1920. No claim was pending on or before July 3, 1931, so that under the Act of July 3, 1930 (section 4, 46 Stat. 992, amending World War Veterans' Act § 19 [38 U.S.C.A. § 445]), and that of June 29, 1936, § 404, 49 Stat. 2034, which limit the consent to suit upon such claims for insurance, this suit could not be maintained. Tyson v. United States, 297 U.S. 121, 56 S.Ct. 390, 80 L.Ed. 520; Weaver v. United States (C.C.A.) 72 F.(2d) 20; Dowell v. United States of America (C.C.A.) 86 F.(2d) 120, decided October 21, 1936. The action on insurance claims granted in the laws establishing the insurance may be reasonably limited without any violence to the Constitution or to good faith. No repudiation of obligation is involved, and no taking of a claimant's property. The necessity of having both public and private claims presented and determined before the lapse of time shall render ascertainment of the truth difficult and uncertain or impossible has always been considered to justify the imposition of limitations, although done subsequently to the arising of the claim, provided the subsequent law fixing the limitation permits a reasonable time for their assertion before the bar falls. A state may thus limit the enforcement of claims against itself without unconstitutionally impairing the obligation of its contracts, and it' may thus limit claims against its citizens without unconstitutionally depriving the claimants of their property. Town of Koshkonong v. Burton, 104 U.S. 668, 26 L.Ed. 886; In re Brown, decided with McGahey v. Virginia, 135 U.S. 662, 701, 10 S.Ct. 972, 34 L.Ed. 304. The United States are not more fettered. In promising 'an action on the claim' it must be implied that there was reserved the right to regulate the action in the usual ways, as by prescribing or altering the mode of procedure or by reasonably limiting the time to sue. In exceptional cases a just claim, though barred from suit, may still be paid by the Congress, or, so far as we are advised, by the Veterans'

Administration, because the limitation on suit does not destroy the claim so as to prevent the sovereign from recognizing it otherwise than in court. As respects the constitutional provisions relied on, the difference between withdrawing the remedy of court enforcement of a claim against the United States and destroying the whole foundation of the claim is clearly recognized in Lynch v. U. S., 292 U.S. 571, 54 S. Ct. 840, 78 L.Ed. 1434, and Perry v. United States, 294 U.S. 330, 354, 55 S.Ct. 432, 436, 79 L.Ed. 912, 95 A.L.R. 1335.

"The question touching estoppel is concluded by our holding in Lynch v. United States, 80 F.(2d) 418. There much expensive litigation had been carried on extending through the Supreme Court before the question of the expiration of the consent thereto was raised. We nevertheless held the court to be without authority to proceed. We decline to overrule that decision."

██ With respect to war risk insurance litigation, the United States, being sovereign, may prescribe the terms and conditions upon which it may be sued. McLaughlin v. United States (C.C.A.) 74 F. (2d) 506; Smith v. United States (D.C.) 56 F.(2d) 636; United States v. Knott (C. C.A.) 69 F.(2d) 907; Walton v. United States (C.C.A.) 73 F.(2d) 15. In the last-cited case, it was held that when the United States consents to be sued, the procedure prescribed by Congress must be strictly followed in order to secure jurisdiction. The Supreme Court, in United States v. Michel, 282 U.S. 656, 51 S.Ct. 284, 75 L.Ed. 598, held that statutes defining the jurisdiction of District Courts in suits against the government cannot be enlarged by implication; and, of course, the obligation of the United States under a war risk insurance policy is governed by federal statutes. Brown v. United States (C.C.A.) 65 F.(2d) 65.

██ It must not be overlooked that the government of the United States, being sovereign and also not having issued its war risk insurance policies for gain, is not placed in the same situation as ordinary commercial insurance companies and is not affected by the same rules, embracing among others estoppel by acts of agents. Crawford v. United States (C.C.A.) 40 F. (2d) 199; Birmingham v. United States (C.C.A.) 4 F.(2d) 508; Bean v. United States (D.C.) 7 F.(2d) 393; United States v. Loveland (C.C.A.) 25 F.(2d) 447.

The Loveland Case, last cited supra, holds that the government cannot be estopped by a wrongful act of one of its employees which may have induced the insured to stop paying his premium. Plaintiff's counsel challenges this case as authority because, on certiorari [In re Loveland's Estate, 278 U.S. 665, 49 S.Ct. 184, 73 L.Ed. 571] the Court of Appeals for the Third Circuit was reversed and the judgment of the District Court [Loveland v. U. S., 18 F.(2d) 585] affirmed. This result followed, however, from confession of error by the Solicitor General on a ground wholly distinct from the question of estoppel, to wit: "This confession of error is made on the ground that no written stipulation signed by the parties waiving a jury was made or filed in the District Court, as provided in section 649 and section 700, Revised Statutes of the United States [28 U.S.C. A. §§ 773, 875] and that in the absence of such a stipulation the sufficiency of the findings of the court to support the judgment may not be examined on appeal."

The reasoning of the Court of Appeals in the Loveland Case, therefore, has not been rejected by our highest court, and commends itself as logical and sound doctrine. The court held that: The United States, by entering the life insurance field through enactment of the War Risk Insurance Acts, did not subject itself to estoppel by acts or omissions of its officers or agents in carrying out the acts, and to which they would have no power to subject it in any other sphere of government activity.

The court said: "The question here involved is the power of servants of the United States to place liability upon it by an act of omission when they would be powerless so to do by an act of commission."

In Wilbur National Bank v. United States, 294 U.S. 120, 55 S.Ct. 362, 364, 79 L.Ed. 798, Mr. Justice McReynolds recognized the established rule in haec verba:

"Undoubtedly, the general rule is that the United States are neither bound nor estopped by the acts of their officers and agents in entering into an agreement or arrangement to do or cause to be done what the law does not sanction or permit. Also, those dealing with an agent of the United States must be held to have had notice of the limitation of his authority. Utah Power & Light Co. v. United States, 243 U.S. 389, 409, 37 S.Ct. 387, 61 L.Ed. 791; Sutton v. United States, 256 U.S.

575, 579, 41 S.Ct. 563, 65 L.Ed. 1099, 19 A. L.R. 403.

"How far, if at all, these general rules are subject to modification where the United States enter into transactions commercial in nature (Cooke v. U. S., 91 U.S. 389, 399, 23 L.Ed. 237; White v. U. S., 270 U. S. 175, 180, 46 S.Ct. 274, 70 L.Ed. 530) we need not now inquire. The circumstances presented by this record do not show that the assured was deceived or misled to his detriment, or that he had adequate reason to suppose his contract would not be enforced or that the forfeiture provided for by the policy could be waived."

■ Counsel for plaintiff stresses the last-quoted paragraph. To gainsay the contention of the plaintiff that his own lack of diligence in resting acquiescently for about four years upon hearsay information obtained through the good offices of a Congressman entitled him to plead estoppel against the government of the United States, it is significant to note that Judge McReynolds added: "The statutes and regulations which govern the War Risk Insurance Bureau we must assume are known by those who deal with it."

Certainly, it must have been known to an active Judge Advocate of the American Legion that a claim must be filed with the Veterans Administration within the limitation of the statute, and also that a disagreement must follow as a condition precedent to the institution of suit.

A Congressman of the United States is an officer of the United States and could not properly or legally represent a war risk insurance claimant in a claim against the United States. The inquiry of the Congressman concerning the insured status of the ex-soldier, Tskanes, was at most a merely gratuitous act; in no sense could the action be construed as a claim presented to the Veterans Administration by Mr. Coleman, the then guardian, afterward administrator of Tskanes. Even if the dictum of Mr. Justice McReynolds be given the comprehensive interpretation placed upon it by plaintiff, the language could not relieve the plaintiff from the plight into which his own inactivity has placed him.

■ It was the mandate of the statute that in his representative capacity he file the claim and obtain a disagreement. This he has neglected to do seasonably. Even could the government be estopped to plead the statute of limitations against a reasonably diligent claimant by misinformation given out by its agents in the Veterans Administration (which this court does not hold), the laches of the plaintiff herein precludes his reliance upon estoppel.

■ It was essential that the plaintiff, in his representative capacity, file a claim with the Veterans Administration for war risk insurance benefits, within the period specified in the statute of limitation.

United States v. Knott (C.C.A.6) 69 F. (2d) 907, 908, holds that the disagreement necessary to give the United States courts jurisdiction of a war risk insurance suit must be a rejection of the identical claim sued upon. The court said, quoting from U. S. v. Burleyson (C.C.A.) 44 F.(2d) 502: "The United States, like every other sovereign, has a right to prescribe the terms and conditions upon which it may be sued, and, in an action such as this, a disagreement between the Bureau and the insured is a jurisdictional prerequisite." See, also, Straw v. United States (C.C.A.) 62 F.(2d) 757; Kelley v. United States (D.C.) 59 F. (2d) 743; Manke v. United States (C.C. A.) 38 F.(2d) 624.

It has been repeatedly held that letters to the Veterans Administration requesting information concerning war risk insurance without asserting a claim cannot be regarded as a claim. Wilson v. United States (C. C.A.) 70 F.(2d) 176; Chavez v. United States (C.C.A.) 74 F.(2d) 508; Corn v. United States (C.C.A.) 74 F.(2d) 438.

The Court of Appeals for the Second Circuit, in Werner, Adm'x, v. United States, 86 F.(2d) 113, has held that a letter from the attorney of the administratrix requesting the necessary forms and information for filing claim does not constitute a claim for insurance benefits. The court said: "The section tolls from the limitation any period between the filing of the 'claim' and its 'denial' by the Administrator, leaving to the insured whatever remains of his period when he filed. It follows that the 'claim' must be something which the Administrator can refuse. No doubt it may be very informal, but it must at least be the assertion of a present demand, not an announcement that a demand will be made. No official can take any action on such a paper."

On the facts revealed in the stipulation in this cause and for the foregoing reasons, the motion of the defendant to dismiss this suit is sustained.