UNITED STATES ex rel. LAPIDES v. WATKINS.

No. 120, Docket 20817.

Circuit Court of Appeals, Second Circuit.

Feb. 6, 1948.

William B. Gurock, of New York City, for relator-appellant.

John F. X. McGohey, U. S. Atty., of New York City (Harold J. Raby, Asst. U. S. Atty., of New York City, of counsel), for respondent-appellee.

Before SWAN, CHASE and FRANK, Circuit Judges.

CHASE, Circuit Judge.

This appeal presents questions as to the correct procedure for determining the admissibility of one who seeks to enter the United States not as an alien but as an American citizen. The appellant asserts that under such circumstances the applicant for admission may not be detained at the border by the immigration authorities but must be admitted pending the determination in appropriate judicial proceedings of his right to enter as a citizen.

The facts are not in dispute. The appellant, a native of what is now Roumania, first entered the United States in 1922. On June 27, 1928, he was duly admitted to citizenship. Except for three short periods of absence he remained in this country until March, 1934 when he left with his family for Palestine. He lived there continuously for more than thirteen years and returned to the United States on July 3, 1947, arriving at New York by plane. He presented his uncancelled certificate of citizenship and a document called a certificate of identity which had been issued to him by the American Consulate General in Palestine on July 6, 1946 and which had stamped on its back,

"Seen for the journey to the United States of Louis Bernard Lapides. Visa valid for presentation at United States ports at any time during 12 months from date." His presentation of it was, of course, within the designated twelve months.

He was detained by the immigration authorities and on July 8, 1947 was given a hearing before a Board of Special Inquiry, convened under 8 U.S.C.A. § 153. The Board of Special Inquiry excluded him under 8 U.S.C.A. § 213(a) (1) as an alien without an unexpired immigration visa and he has since been held in the custody of the appellee for return to Palestine. This determination of the Board was upheld by the Commissioner and the Board of Immigration Appeals. The appellant then obtained a writ of habeas corpus from the District Court for the Southern District of New York, and the appeal is from the order of that court dismissing the writ.

▆▆▆▆ Whether the appellant's detention is unlawful depends, as he well says, upon whether he is an alien. If he is a citizen, he was unlawfully detained, for neither the Director of Immigration and Naturalization nor a Board of Special Inquiry has any power to exclude a citizen. But the appellant is not equally right in his contention that the Board of Special Inquiry had no jurisdiction to determine whether he were a citizen, i.e., had no jurisdiction to determine whether it had jurisdiction to exclude him. He argues that as soon as he presented his uncancelled certificate of citizenship the immigration service was powerless to interfere with, much less to prevent, his entry and that any question respecting his citizenship could only be re-

solved by independent judicial proceedings.[1] But his actual status depended upon the applicable law in the light of all the relevant facts. Though the Board of Special Inquiry had no jurisdiction to exclude if he were a citizen and though it may well be that his certificate of citizenship could be cancelled only in judicial proceedings conforming to the statute,[2] the facts upon which his status depended were in the first instance for the administrative determination of the Board. It was empowered to determine those facts like any others pertinent to a preliminary decision on the question of its jurisdiction. United States ex rel. Bilokumsky v. Tod, 263 U.S. 149, 44 S.Ct. 54, 68 L.Ed. 221; United States ex rel. Chew Deck v. Commissioner, D.C., 17 F.Supp. 78, affirmed, 2 Cir., 86 F.2d 1020, certiorari denied 300 U.S. 666, 57 S. Ct. 508, 81 L.Ed. 874. If the appellant's status under the law was that of an alien, the Board had the same jurisdiction to act in respect to him that it would have had as to any other alien. It is unnecessary to consider whether the relator by reason of his claim to citizenship was entitled to a trial de novo in the habeas corpus proceeding. The facts were conceded and no evidence additional to that before the board of special inquiry was offered. On the conceded facts we hold that the relator had lost his citizenship.

The pertinent statute, Sec. 404 of the Nationality Act of 1940, provides that: "A person who has become a national by naturalization shall lose his nationality by:

\*　　\*　　\*　　\*　　\*　　\*

(c) Residing continuously for five years in any other foreign state, except as pro-

---

[1] Of course the loss of the appellant's American citizenship has been judicially established in the present proceedings in the district court. But this does not meet the appellant's argument which we understand to be that he is entitled to have the initial determination as to his status by a judicial tribunal not to any extent bound by the findings of the immigration authorities.

[2] Sec. 338 of the Nationality Act of 1940, 54 Stat. 1158, 8 U.S.C.A. § 738; United States ex rel. Volpe v. Jordan, 7 Cir., 161 F.2d 390; see also Schneiderman v. United States, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796. Sec. 338, however, establishes a procedure for cancellation of the order and certificate of naturalization only on the grounds that they were fraudulently or illegally procured. There is apparently no express statutory procedure for cancellation of the certificate where citizenship is lost under 8 U.S.C.A. §§ 800–810. Thus, any argument to the effect that permitting the immigration authorities to make an initial determination as to the status of an applicant for admission results in establishing two procedures for revocation of citizenship where only one is contemplated by the statutes necessarily must fail.

vided in section 406 hereof."[3] On the undisputed facts the appellant, a naturalized citizen who had resided continuously in Palestine for over thirteen years, had lost his citizenship by voluntary expatriation beyond the permitted time, unless he could bring himself within some exception to the statute. No judicial proceedings were necessary to bring about this change of status. It followed by virtue of the statute which took effect merely through residence abroad and lapse of time. None of the exceptions to the statute were applicable to him. It is not claimed that sec. 406 of the Nationality Act of 1940,[4] as amended, was relevant. Section 409 of the Act, as amended, provides, however, that "Nationality shall not be lost under the provisions of section 404 or 407 of this Act until the expiration of six years following the date of the approval of this Act: * * *."[5] But the Act was approved on October 14, 1940, so that this appellant's time for return concededly expired as of October 14, 1946. Were this all that appeared the appellant clearly had lost his American nationality before he presented himself for admission at New York on July 3, 1947, and was ordered excluded.

■■ But he relies upon his certificate of identity and its indorsement as an extension of his time for return, not in the sense, however, that it effected any extension as provided by the statute,[6] but in the sense that it operated as a sort of estoppel. He was led to believe by its issuance to him, he asserts, that his time was extended, so that he can not now be held to be an alien, and excluded as such. We shall resolve in favor of the appellant any doubt as to whether the indorsement may fairly be read to mean more than that the certificate would be good for purposes of identification for the time limited and assume that he justifiably believed that it did ex-

tend the statutory period of his permitted absence abroad without loss of citizenship. Even so, it was wholly ineffective under the law for that purpose, since no United States consul has any power to waive the provisions of the immigration laws. United States ex rel. Sage v. District Director, 7 Cir., 82 F.2d 630. Cf. Werblow v. United States, 2 Cir., 134 F.2d 791. The issuance of the certificate or any statements made by the consul in connection therewith could not create an estoppel against the Government. Wilber National Bank v. United States, 294 U.S. 120, 123, 55 S.Ct. 362, 79 L.Ed. 798; Utah Power & Light Co. v. United States, 243 U.S. 389, 409, 37 S.Ct. 387, 61 L.Ed. 791.

It may be noted that these proceedings leave the appellant's certificate of citizenship unaffected as such. We do not decide what effect, if any, they have upon his right to sue under 54 Stat. 1171, 8 U.S.C.A. § 903, as interpreted by Bauer v. Clark, 7 Cir., 161 F.2d 397.

Affirmed.

35 C.C.P.A. (Patents)

---

[3] 54 Stat. 1170, 8 U.S.C.A. § 804.

[4] 54 Stat. 1170, as amended, 56 Stat. 1043, 56 Stat. 1085, 8 U.S.C.A. § 806.

[5] 54 Stat. 1171, as amended, 55 Stat. 743, 56 Stat. 779, 58 Stat. 747, 59 Stat. 544, 8 U.S.C.A. § 809.

[6] A certificate of identity may be issued by diplomatic or consular officers to an alleged citizen living abroad who has brought an action "for a judgment declaring him to be a national of the United States" under Sec. 503 of the Nationality Act of 1940, 54 Stat. 1171, 8 U.S.C.A. § 903. The certificate permits admission to the United States on the condition that the alleged citizen "shall be subject to deportation in case it shall be decided by the court that he is not a national of the United States." The appellant, however, did not bring an action under the statute and hence was not entitled to obtain a certificate for purposes of admission.