176 F.2d 619 (1949)
LAPIDES
v.
CLARK, Attorney General, et al.
No. 9984.
United States Court of Appeals District of Columbia Circuit.
Argued March 14, 1949.
Decided May 23, 1949.
Writ of Certiorari Denied October 24, 1949.
*620 Mr. Irving Jaffe, Washington, D. C., for appellant. Messrs. Jack Wasserman, Washington, D. C., and Abram Orlow, Philadelphia, Pa., were on the brief for appellant.
Mr. John D. Lane, Assistant United States Attorney, Washington, D. C., with whom Mr. George Morris Fay, United States Attorney, Washington, D. C., was on the brief, for appellees.
Mr. Thomas M. Cooley, II, Washington, D. C., was on the brief for the American Civil Liberties Union as amicus curiae, urging reversal.
Mr. Marcus Cohn, Washington, D. C., was on the brief for the American Jewish Committee as amicus curiae, urging reversal.
Mr. Sanford H. Bolz, Washington, D. C., was on the brief for the American Jewish Congress as amicus curiae, urging reversal.
Before EDGERTON, CLARK, and PROCTOR, Circuit Judges.
Writ of Certiorari Denied October 24, 1949. See 70 S.Ct. 101.
PROCTOR, Circuit Judge.
This appeal is from an order of the District Court dismissing the complaint of appellant brought under Title 8, Section 903 of the United States Code, Annotated, for a judgment declaring him to be a national of the United States and that Section 404 of the Nationality Act of 1940, as amended, 8 U.S.C.A. §§ 804, 809, is inapplicable to him.
Appellant was naturalized in 1928. He went to Palestine in 1934 and remained there until 1947, when, on July 3, he arrived in the United States. He presented his certificate of citizenship to the Immigration authorities at New York. They excluded him upon the ground that he had expatriated himself under Section 804, 8 U.S.C.A., and was an alien without a quota immigration visa. Pertinent parts of the section provide that: "A person who has become a national by naturalization shall lose his nationality by: * * * (c) Residing continuously for five years in any other foreign state, except as provided in section 806 hereof." None of the exceptions apply to appellant. He contends that Section 804 is unconstitutional; therefore, that his American citizenship remains unaffected by his prolonged residence abroad. It is argued that the law arbitrarily discriminates against naturalized citizens, and that no distinction can be drawn validly between them and native born.
Expatriation is a natural and inherent right of all peoples. 8 U.S.C.A. § 800. Congress has implied power to provide therefor. Mackenzie v. Hare, 239 U. S. 299, 311, 36 S.Ct. 106, 60 L.Ed. 297, Ann.Cas.1916E, 645. Obviously it cannot draw arbitrary and groundless distinctions between citizens. Hirabayashi v. United States, 320 U.S. 81, 100, 63 S.Ct. 1375, 87 L.Ed. 1774. However, where classification has reasonable relation to legitimate legislative ends and is supported by considerations of policy and practical convenience, it is not arbitrary. Steward Machine Co. v. Davis, 301 U.S. 548, 584, 57 S.Ct. 883, 81 L.Ed. 1279, 109 A.L.R. 1293. The guaranty of due process demands only that a law shall not be unreasonable, arbitrary or capricious, and that the means selected shall have a reasonable and substantial relation to the object sought to be obtained. Nebbia v. New York, 291 U.S. 502, 525, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L. R. 1469.
*621 The history of Section 804 accounts for its application to naturalized citizens only. It reveals a recognition by Congress of the need for legislation to lessen friction with foreign governments growing out of disputes as to the nationality of our naturalized citizens and their offspring residing for prolonged periods in foreign lands. See Hearings before Committee on Immigration and Naturalization on H. R. 6127 Superseded by H. R. 9980, 76th Cong., 1st Sess., 134-135, 139-141, 407-409, (1940); Sen. Rep. No. 2150, 76th Cong., 3d Sess. 4 (1940); 86 Cong. Rec. 11948, 11949 (1940); also Excerpts, Appellees' Brief, page 18.
The statute has a purpose in the international policy of our government. The Act does not arbitrarily impose a loss of citizenship. It deals with a condition voluntarily brought about by one's own acts, with notice of the consequences. In that sense there is concurrence by the citizen. Mackenzie v. Hare, supra, 239 U.S. at page 311, 36 S.Ct. 106, 60 L.Ed. 297. There the statute, 34 Stat. 1228, provided that any American woman marrying a foreigner should take the nationality of her husband. The distinction thus drawn between female citizens marrying Americans and those marrying foreigners was held not to be an arbitrary exercise of power, as it was dictated by a policy to avoid embarrassments and controversies with foreign governments. In view of this decision, supporting classification as between native born citizens, we cannot doubt that for a similar purpose Congress has the power to distinguish between native born and naturalized citizens. Nor was Section 804 designed to apply retroactively, and it has not been so applied to appellant. He voluntarily remained in Palestine more than five years after the effective date of the Act. He points to the failure of the statute to excuse unavoidable delays in returning to this country as evidence of its arbitrary nature. Yet he advances no excuse for his own failure to return within the permitted time. The record reveals no arbitrary application of the statute as to him. So its possible unconstitutional application to others in different circumstances cannot be considered in this case. United States v. Petrillo, 332 U.S. 1, 11, 12, 67 S.Ct. 1538, 91 L.Ed. 1877.
We agree with the United States Court of Appeals for the Second Circuit that:
"* * * On the undisputed facts the appellant, a naturalized citizen who had resided continuously in Palestine for over thirteen years, had lost his citizenship by voluntary expatriation beyond the permitted time, * * *. No judicial proceedings were necessary to bring about this change of status. It followed by virtue of the statute which took effect merely through residence abroad and lapse of time. * * *" United States ex rel. Lapides v. Watkins, 2 Cir., 165 F.2d 1017, 1019.
In the foregoing case, and in this, there is a virtual identity of parties and allowable issues. The purpose of each was to secure a determination that appellant is a citizen, to the end that he might obtain release from his present detention and be allowed to enter the country as a citizen. Obviously, he could have attacked the constitutionality of the Act in the habeas corpus proceedings. Had he done so, and prevailed, that would have proven a simple and speedy method of accomplishing his objectives. Evidently sensing that res judicata might apply, he cites here Collins v. Loisel, 262 U.S. 426, 43 S.Ct. 618, 67 L.Ed. 1062, and Wong Doo v. United States, 265 U.S. 239, 44 S.Ct. 524, 68 L.Ed. 999, as authority for the proposition that the doctrine does not apply as to habeas corpus cases, overlooking the fact that the present action is for a declaratory judgment. We wonder what justification there can be for this additional and needless litigation with all its trouble, expense and delay, which the law so much abhors. Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 282, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110; Angel v. Bullington, 330 U.S. 183, 186, 192, 67 S.Ct. 657, 91 L.Ed. 832. In view of the granting of the motion to dismiss the complaint, the respondents did not answer. That probably accounts for *622 the fact that the habeas corpus case was not pleaded in bar of the present action. Yet evidence of that case is in the complaint itself. However, in view of the peculiar situation, we do not pass upon the question. Yet, we do think, under the circumstances, that great weight should be given the conclusion of the court in the New York case. Salinger v. Loisel, 265 U.S. 224, 230, 44 S.Ct. 519, 68 L.Ed. 989; Wong Doo v. United States, supra, 265 U.S. at pages 240, 241, 44 S.Ct. 524, 68 L. Ed. 999. This we readily do, as our own conclusion is entirely in accord that appellant is not a citizen of the United States. Therefore, the judgment of the District Court is
Affirmed.
EDGERTON, Circuit Judge (dissenting).
In my opinion the appellant's expatriation and banishment are unconstitutional on two grounds. Congress may not discriminate against naturalized citizens. Arbitrary discrimination is not due process of law.
The Constitution empowers Congress "to establish an uniform rule of naturalization." Article I, § 8, Par. 4. A "rule of naturalization" regulates eligibility and procedure for becoming a citizen. It increases the number of citizens but does not divide them into classes. By authorizing Congress to prescribe who may be naturalized and how, the Constitution does not authorize it to deprive citizens either at or after naturalization of liberties that other citizens enjoy. "The power of naturalization, vested in Congress by the Constitution, is a power to confer citizenship, not a power to take it away." United States v. Wong Kim Ark, 169 U.S. 649, 703, 18 S.Ct. 456, 477, 42 L.Ed. 890. Chief Justice Marshall said in 1824: "A naturalized citizen * * * becomes a member of the society, possessing all the rights of a native citizen, and standing, in the view of the constitution, on the footing of a native. The constitution does not authorize congress to enlarge or abridge those rights. The simple power of the national legislature is, to prescribe a uniform rule of naturalization, and the exercise of this power exhausts it, so far as respects the individual. The constitution then takes him up, and, among other rights, extends to him the capacity of suing in the courts of the United States, precisely under the same circumstances under which a native might sue." Osborn v. United States Bank, 9 Wheat. 738, 22 U.S. 738, 827, 6 L.Ed. 204. The Supreme Court said in 1913: "Under our Constitution, a naturalized citizen stands on an equal footing with the native citizen in all respects, save that of eligibility to the Presidency."[1] In the Knauer case in 1946 the Court pointed out that "there are other exceptions of a limited character" and, in a footnote, mentioned the Nationality Act.[2] But in that case the Court was dealing with cancellation of an invalid naturalization because of fraud in its procurement. The Court had no opportunity to consider and decide whether a valid naturalization may be terminated because of residence abroad.
Deprivation of liberty by severe and arbitrary discrimination is not due process of law. Aside from the Nationality Act, citizens may live abroad. By imposing a heavy penalty on the exercise of this liberty the Nationalized Act takes part of it away from all naturalized citizens, regardless of their devotion to America and their connections here. All native citizens, regardless *623 of possible devotion to a foreign country and connections there, are exempt. Congress may expatriate citizens on reasonable grounds. No doubt these may include five years residence abroad. But it does not follow that Congress may expatriate some citizens and not others on this ground. The Mackenzie case[3] upheld as reasonable a statute that expatriated women but not men who married aliens. Some distinctions between citizens solely because of their sex are still considered reasonable. Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198. But "distinctions between citizens solely because of their ancestry are by their very nature odious to a free people," Hirabayashi v. United States, 320 U.S. 81, 100, 63 S.Ct. 1375, 1385, 87 L.Ed. 1774. Distinctions because of birthplace are equally arbitrary. The fact that the appellant was born in Austria is no reason for penalizing his sojourn in Palestine. Together with the immigration law the Nationality Act makes it in effect a crime punishable by banishment, which may well be called cruel and unusual, for some citizens but not for others to live five years abroad. Even complete inability, from whatever cause, to return to the United States during the five-year period gives no immunity, and a considerable number of foreign-born Americans have therefore been banished by circumstances over which they had no control.[4]
The government does not contend that the habeas corpus case of United States ex rel. Lapides v. Watkins, 2 Cir., 165 F.2d 1017, in which these constitutional questions were not raised, concludes them.
NOTES
[1] Luria v. United States, 231 U.S. 9, 22, 34 S.Ct. 10, 13, 58 L.Ed. 101. Cf. United States v. Schwimmer, 279 U.S. 644, 649, 49 S.Ct. 448, 73 L.Ed. 889; Baumgartner v. United States, 322 U.S. 665, 673, 64 S.Ct. 1240, 88 L.Ed. 1525.
[2] The entire footnote reads: "Thus a naturalized citizen must wait seven years before he is eligible to sit in the House (Article I, Section 2) and nine years before he can enter the Senate. Article I, Section 3. Furthermore, a naturalized citizen may lose his American citizenship by residing abroad for stated periods. Sections 404-406, Nationality Act of 1940, 54 Stat. 1137, 1170, 8 U.S.C. §§ 804-806 [8 U.S.C.A. §§ 804-806]. See Perkins v. Elg, 307 U.S. 325, 329 [59 S. Ct. 884, 886, 83 L.Ed. 1320]." Knauer v. United States, 328 U.S. 654, 658, 66 S. Ct. 1304, 1307, 90 L.Ed. 1504.
[3] Mackenzie v. Hare, 239 U.S. 299, 36 S.Ct. 106, 60 L.Ed. 297, Ann.Cas.1916E, 645.
[4] Involuntary Loss of American Citizenship, p. 16, Report of the Special Committee on Expatriation, National Council on Naturalization and Citizenship (March 1947).