**FIRST TRUST & SAVINGS BANK OF DAVENPORT, IOWA v. UNITED STATES.**

No. 14717.

United States Court of Appeals
Eighth Circuit.

July 13, 1953.

Stephen A. Hart, Jr., and Martin F. McCarthy, Davenport, Iowa, for appellant.

Walter H. Beaman, Jr., Special Asst. to the Atty. Gen. (Charles S. Lyon, Asst. Atty. Gen., Ellis N. Slack, Special Asst. to the Atty. Gen., William R. Hart, U. S. Atty., and Cloid I. Level, Asst. U. S. Atty., Des Moines, Iowa, on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

This action was brought by Henry A. Kraftmeyer in his lifetime to recover amounts paid by him on account of 50 percent fraud penalties that he claimed were wrongfully assessed against him in respect to deficiencies in his income taxes. On the trial to the court without a jury there was judgment of dismissal at the costs of the plaintiff and he appealed. He died on January 24, 1953, and the administrator of his estate has been substituted as appellant.

The 50 percent "fraud penalties" were assessed on the ground that deficiencies in his income taxes for the years 1937, 1938, 1940, 1941, 1942, 1943, 1944 and 1945, were "due to [his] fraud with intent to evade tax" as denounced by Internal Revenue Code, 26 U.S.C.A. § 293(b), which provides:

"(b) *Fraud.* If any part of any deficiency is due to fraud with intent to

evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612(d) (2)."

The appellant does not claim that there were no deficiencies in Mr. Kraftmeyer's income taxes for the years in question. Such deficiencies were determined and assessed against him and were paid by him with interest, together with 25 per cent addition assessed for failure to file returns, but it is insisted that the conclusion of the trial court that such deficiencies "were due in whole or in part to fraud with intent to evade tax" was not supported by substantial evidence, was contrary to the evidence, and was induced by erroneous view of the law. Appellant's position is that the taxpayer's civil liability for addition to tax was limited to the 5 per cent and 25 percent additions prescribed by 26 U.S.C.A. § 293 (a) and 291(a), which read:

"§ 293(a) *Negligence.* If any part of any deficiency is due to negligence, or intentional disregard of rules and regulations but without intent to defraud, 5 per centum of the total amount of the deficiency (in addition to such deficiency) shall be assessed, collected, and paid in the same manner as if it were a deficiency, except that the provisions of section 272(i), relating to the prorating of a deficiency, and of section 292, relating to interest on deficiencies, shall not be applicable."

"§ 291(a) In case of any failure to make and file return required by this chapter, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the tax: 5 per centum if the failure is for not more than thirty days with an additional 5 per centum for each additional thirty days or fraction thereof during which such failure continues, not exceeding 25 per centum in the aggregate. The amount so added to any tax shall be collected at the same time and in the same manner and as a part of the tax unless the tax has been paid before the discovery of the neglect, in which case the amount so added shall be collected in the same manner as the tax. The amount added to the tax under this section shall be, in lieu of the 25 per centum addition to the tax provided in section 3612(d) (1)."

There was no conflict in the evidence at the trial and the testimony of Mr. Kraftmeyer in his own behalf was apparently frank and candid. He lived at Bettendorf, Iowa, and although he had long received taxable income, he attained the age of 70 years without ever filing any income tax return. The only testimony as to how that came about was the account that he gave himself.

He was in his 71st year when he gave his testimony in this case to the effect that he knew nothing about bookkeeping and had never kept business records and no one ever told him that he had to file an income tax return. He heard of income tax prior to 1945, but thought that he "wasn't making any income" and that "he had no income." He figured that he was paying a general county and city tax and that based on what he had invested the investment wasn't making any particular return. He did not know that he owed any tax; did not know how to figure it out or how to go about it. He never had any fraudulent intent to evade taxes.

Mr. Ryan of the Internal Revenue Collector's office (a witness for the government) first brought the matter of failing to file income tax returns to his attention in a telephone call in which Mr. Ryan asked him to come down and see him. Not knowing what it meant and not realizing the importance of the matter, Mr. Kraftmeyer said he didn't have time. Mr. Ryan advised him that he better have time. So he went.

In the ensuing interview he told Mr. Ryan that he had never filed an income tax return and the seriousness of his predicament was apparently brought home to him. He employed an attorney and cooperated with the revenue agents to produce a full showing of all his money transactions

through the years in question. As Mr. Ryan testified, "he made no effort to conceal". It was shown that the way in which he had made money was that he had from time to time through the years acquired pieces of vacant land close to town and had carried on the buying and selling of cattle which he ran for short periods on the lands. He never farmed. Some time before Mr. Ryan telephoned him he had sold one of his pieces of land to the Aluminum Company of America for $66,000, which was much more than it had cost him. That seems to have been his first business transaction likely to attract the attention of the tax authorities. But he had carried on all of his business dealings through banks. He had his cancelled checks and the deposit records were available at the banks. He had never done anything to conceal or disguise the true nature of any of his transactions or hidden anything away, and a record of his income that was 90 percent complete was readily made up. He was duly taxed and statutory interest was added. Twenty-five percent was also added for his failure to make and file returns. He was also informed against criminally under 26 U.S. C.A. § 145(a) for wilfully failing to make the income tax return required of him for the year 1945 and on his plea of guilty was fined and paid $10,000 and was sentenced to imprisonment but was released on probation.

The further 50 percent addition to taxes in the sum of $8,153 assessed against him on the ground that the deficiencies were "due to [his] fraud with intent to evade tax" is the only part of the $32,203 tax, interest and additions then collected from the taxpayer which was in issue and sought to be recovered in this action.

There was no proof of any wilful commission of any affirmative act of fraud on the part of the taxpayer to evade the taxes which he admitted he owed and ought to have filed return for during the years in question.[1] His plea of guilty to the charge of wilfully failing to make and file return was of course evidence against him of the elements of that charge. It was compatible with all the other evidence in the case that his dereliction consisted only in wilful omission and passive neglect to perform the duty of making returns imposed upon him by law.

The position of the appellant is that the two kinds of civil exactions by way of additions to tax, namely, the 5 percent up to 25 percent, and the 50 percent additions which Congress has provided to aid administration of revenue collection are distinguished from each other in the same way as are the two kinds of criminal penalties prescribed to the same end in 26 U.S.C.A. § 145(a) and (b). As to both the civil and the criminal provisions, Congress distinguishes between the taxpayer who is guilty of mere passive failure to perform his duty in respect to a tax owing by him and the taxpayer who is guilty of affirmative attempt or practice of fraud to evade such tax. Though 25 percent addition to tax was correctly added to Mr. Kraftmeyer's deficiencies because he wilfully failed and continued to fail to make returns required of him, the 50 percent assessment was erroneously made because his dereliction was passive and included no affirmative act of fraud that caused his tax deficiencies. His deficiencies were not "due to fraud with intent to evade tax".

Although in the nature of things it must inevitably have happened that many people have failed to file the income tax returns required of them by law, it appears that this is the first case in which any federal court has sustained the assessment of the 50 percent fraud penalty against a taxpayer with no more showing of fraud than his mere failure to file tax returns required of him, which was the only basis for the assessment proved in this case. At

[1]. Mr. Ryan testified that in his interview he asked Mr. Kraftmeyer about duplicate copies of his tax returns and Mr. Kraftmeyer gave false answers implying that he had such documents. But manifestly the deficiencies of Mr. Kraftmeyer were not in anywise "due to" anything occurring in the interview with Mr. Ryan where he admittedly told Mr. Ryan that he had never filed any income tax return. Ryan already knew the taxpayer had made no returns.

least we are not cited to any other such case and we have found none. The cases that are cited to us here and relied on by the government where taxpayers have made false returns and have been held criminally and civilly for "attempt to evade tax" or for "fraud to which tax deficiency was due", are manifestly irrelevant. Of course, the filing of false returns is affirmative fraudulent conduct which is adapted to bring about deficiency of tax and an intent to evade tax may be inferred from it. As the Court of Appeals for the Third Circuit succinctly put it, "the man who files a wilfully false return has endeavored to mislead his government. He creates the appearance of having complied with the law, whereas his neighbor who has filed no return does no such thing. Not only has he created the appearance of complying, but. that apparent compliance stands a good chance of remaining unattacked, for the tax authorities cannot possibly audit every taxpayer's return every year. * * * The law has always distinguished between failing to disclose useful information and making a disclosure which is a lie." United States v. Croessant, 3 Cir., 178 F.2d 96, 97, q. v.

But although this case comes to us as one of first impression with no cited precedent to support the judgment so far as the identical issue is concerned, the teaching of the opinions that have been handed down with controlling authority in criminal cases establishes that in the "structure of civil and criminal sanctions" which Congress has provided for collection of income taxes, the "wilful failure" to file returns by the taxpayer in this case must be held to fall in the category of lesser civil derelictions calling for the smaller "addition to tax" as well as constituting a minor and not a major criminal offense. The applicable principles were clearly defined by the Supreme Court in Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418, and in the opinion of this court in Cave v. United States, 8 Cir., 159 F.2d 464.

The Spies case was a criminal prosecution in which Spies was charged with attempting to defeat and evade income tax and at the opening of his trial he admitted, as the taxpayer has done in this case, that he had sufficient income during the year in question to place him under a statutory duty to file a return and pay a tax and that he failed to do either. He requested the court to charge the jury that it could not find him guilty if they found only that he had wilfully failed to make a return and had wilfully failed to pay the tax, and the trial court refused to so instruct. The adverse ruling on his request for that instruction was the only question considered on his appeal from his conviction to the Second Circuit, and on his certiorari from the Supreme Court to that court and in answer to the question the Supreme Court declared the law to be in accord with the requested instruction. It held that the wilful failure of Spies to file return and wilful failure to pay tax was not enough to justify convicting him of what the Congress evidently considered the graver offense against the revenues—of attempting to evade a tax. To consummate that graver offense the court declared that "Congress intended some willful commission in addition to the willful omissions that make up the list of misdemeanors [wilful failure to file return, etc.]." [317 U.S. 492, 63 S.Ct. 368.] On page 499 of 317 U.S., on page 368 of 63 S.Ct., the court added:

"We think that in employing the terminology of attempt to embrace the gravest of offenses against the revenues Congress intended some willful commission in addition to the willful omissions that make up the list of misdemeanors. Willful but passive neglect of the statutory duty may constitute the lesser offense, but to combine with it a willful and positive attempt to evade tax in any manner or to defeat it by any means lifts the offense to the degree of felony."

The distinction between the lesser and the graver derelictions which govern the larger and the smaller civil additions to tax is of exactly the same character as that found by the Supreme Court in respect to the criminal penalties. Manifestly wilful failure to file returns may have the same effect on the collection of the revenue as an attempt to evade a tax. But Congress

makes the difference on the civil side as it does on the criminal side, between the taxpayer whose deficiencies of tax are due to (or caused by) his affirmative commission of fraud and the one whose deficiencies of tax are due to wilful omission to make return. That omission justifies the addition of 5 percent up to 25 percent of the deficiencies found against the taxpayer but does not afford any basis for the addition of 50 percent to his deficiencies. Only the commission of acts of fraud with intent to evade tax to which "the deficiencies are due" (or which bring about the deficiencies) affords a basis for the 50 percent addition to tax.

The teaching of the opinion of this court in Cave v. United States, 8 Cir., 159 F.2d 464, is to the same effect as that of the Supreme Court in the Spies case.

In the Spies case, the conviction for felonious attempt to evade tax was reversed because the necessary showing of "some willful commission" was lacking. But the conviction of Cave for the same criminal offense was sustained in this court because it was shown that Cave had filed income tax returns which "were deliberately false and fraudulent". In other words, he was guilty of the "wilful commission" of fraudulent acts to defeat tax that lifted his offense to the gravest of offenses against the revenues. In the opinion (written for this court by Judge Thomas), complete analysis was made of the Spies case and the distinction between the lesser offenses involving only wilful failure of taxpayers to perform a duty and the gravest offense involving "wilful commission" of fraudulent acts were made "too clear to permit confusion." [159 F.2d 467.]

There is the same necessity to distinguish between the two kinds of dereliction of taxpayers for which Congress has provided different percentages of addition to tax. The same reasoning establishes that the lesser 5 to 25 percent additions to tax provided in respect to "deficiencies due to negligence or intentional disregard of rules and regulations" or for "failure to make and file return * * * due to willful neglect" by sections 293 and 291 were applicable to the taxpayer in this case.

He paid the 25 percent assessment and the 50 percent assessment was erroneously imposed.

The judgment sustaining the 50 percent assessment was erroneous and is reversed with direction to award judgment of recovery to plaintiff.

Reversed with directions.

THOMAS, Circuit Judge (dissenting).

This is an action at law to recover additions to the taxpayer's income taxes for the years involved allegedly "illegally colected" by the government. The taxpayer admittedly made no income tax returns and paid no income taxes for these years. The additions to the tax were imposed under 26 U.S.C.A. § 293(b) quoted in the majority opinion. In his complaint the taxpayer alleged that "in failing to file income tax returns for the years [in question] he did not act fraudulently with intent to evade the tax." The government denied these allegations. The case was tried to the court without a jury. The court filed an opinion and made findings of fact and conclusions of law and dismissed the complaint.

The decisive question to be determined on this appeal is whether the following finding of the trial court is "clearly erroneous":

"From the whole record the Court finds that plaintiff's course of conduct was not only an omission but an intentional evasion of his duty to make an annual return of income and pay tax thereon. The plaintiff's conduct was not merely silence or oversight, but was deliberate and intentional concealment, the purpose of which was to evade the payment of tax."

It is true there was some conflict in the evidence; but that was for the trial court to resolve, not this court. As said by the Supreme Court in United States v. Jefferson Electric Manufacturing Co., 291 U.S. 386, 407, 54 S.Ct. 443, 450, 78 L.Ed. 859: "It [the Court sitting without a jury] was exercising the functions of a jury and its findings are on the same plane as if embodied in a jury's special verdict." And

see Owens v. United States, 8 Cir., 197 F.2d 450; Wessel v. United States, 8 Cir., 49 F.2d 137; Reinecke v. Spalding, 280 U.S. 227, 232, 50 S.Ct. 96, 74 L.Ed. 385; Stone v. United States, 164 U.S. 380, 17 S.Ct. 71, 41 L.Ed. 477.

This rule is now included in Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., in these words: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

The majority opinion relies upon the principles and reasoning of the courts in Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418, and Cave v. United States, 8 Cir., 159 F.2d 464. Both of these cases were criminal cases brought under 26 U.S.C.A. § 145(b), and in my opinion have no application to the facts or the law in this case. The distinction between § 145(b) and § 293(b) was clearly described by the Supreme Court in Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 632, 82 L.Ed. 917. In that case Mitchell was first indicted under § 146(b) of the statute, Revenue Act of 1928, for willfully attempting to evade and defeat his income tax, and upon trial to a jury he was acquitted. The Commissioner also assessed a 50% addition to his income tax under § 293(b) and Mitchell claimed that the 50% addition was barred by the doctrine of res judicata. The United States Court of Appeals sustained this contention. In reversing the Court of Appeals, the Supreme Court said: "The difference in degree of the burden of proof in criminal and civil cases precludes application of the doctrine of res judicata. * * * It [the acquittal] did not determine that Mitchell had not willfully attempted to evade the tax."

The Supreme Court further observed in the Mitchell case that "In assessing income taxes the Government relies primarily upon the disclosure by the taxpayer of the relevant facts. This disclosure it requires him to make in his annual return. To ensure full and honest disclosure, to discourage fraudulent attempts to evade the tax, Congress imposes sanctions. Such sanctions

may confessedly be either criminal or civil. * * * Congress may impose both a criminal and a civil sanction in respect to the same act or omission; * * *." The court explained that the proceeding under § 293(b) is civil and not criminal or punitive. The burden of demonstrating error of the trial court in this court was, therefore, upon the appellant, and he has failed to do so. Coca Cola Bottling Co. of Black Hills v. Hubbard, 8 Cir., 203 F.2d 859, 861, and cases cited.

The majority opinion apparently relies upon the testimony of Mr. Kraftmeyer, the taxpayer, wherein he testified that he knew nothing about bookkeeping; that he never kept business records and no one ever told him that he had to file an income tax return; that he heard of an income tax prior to 1945, but thought that he wasn't making any income and that he had no income.

The error in this view of the case is obvious. It is the law that "All persons are presumed to know the general public laws of the state or country where they reside, and the legal effect of their acts." 31 C.J.S., Evidence, § 132. In Blackhawk-Perry Corp. v. Commissioner, 8 Cir., 182 F.2d 319, this court at page 322 said:

"The Government, and not the Commissioner, is interested in the collection of taxes; and the Government cannot be estopped by a mistake made by a taxpayer. A taxpayer, as well as the Commissioner, is presumed to know the law, * * *." Certiorari denied, 340 U.S. 875, 71 S.Ct. 120, 95 L.Ed. 636; rehearing denied 341 U.S. 956, 71 S.Ct. 1010, 95 L.Ed. 1377. And see, Thomaston Cotton Mills v. Rose, Collector, 5 Cir., 62 F.2d 982, certiorari denied, 289 U.S. 754, 53 S.Ct. 785, 77 L.Ed. 1499; United States v. Hodson, 10 Wall 395, 409, 77 U.S. 395, 409, 19 L.Ed. 937; Wilber Nat. Bank of Oneonta, N. Y. v. United States, 294 U.S. 120, 55 S.Ct. 362, 79 L.Ed. 798; Goodman v. Simonds, 20 How. 343, 61 U.S. 343, 15 L.Ed. 934; Pettibone v. Cook County, Minnesota, 8 Cir., 120 F.2d 850. And see cases cited in footnote 7, at page 855 of the last cited case.

It is presumed, also, that taxes paid are rightly collected on assessments correctly

made by the Commissioner. Niles Bement Pond Co. v. United States, 281 U.S. 357, 50 S.Ct. 251, 74 L.Ed. 901.

And a taxpayer suing to recover overpayment of income taxes is required to show compliance with all conditions provided by statute. John F. Jelke Co. v. Smietanka, 7 Cir., 86 F.2d 470.

The emphasis in the majority opinion placed on the taxpayer's failure to keep books of account is without significance, except as it supports the finding of the trial court. Section 51 of the Internal Revenue Code, 26 U.S.C.A., § 51, requires every individual having for the taxable year a gross income of $600 or more to make a return under oath; and § 54 provides: "Every person liable to any tax imposed by this chapter or for the collection thereof, shall keep such records, render under oath such statements, make such returns, and comply with such rules and regulations, as the Commissioner, with the approval of the Secretary, may from time to time prescribe."

And the Code of Federal Regulations, Title 26, § 29.54–1, reads:

"*Records and Income Tax Form.* Every person subject to the [income] tax * * * shall, for the purpose of enabling the Commissioner to determine the correct amount of income subject to the tax, keep such permanent books of account or records, including inventories, as are sufficient to establish the amount of the gross income and the deductions, credits, and other matters required to be shown in any return under chapter 1 * * *."

See Bechelli v. Hofferbert, D.C.Md., 111 F.Supp. 631.

I cannot agree that the finding of the trial court is "clearly erroneous", or that it is not supported by the record. Here we have the case of a successful business man who in the years involved enjoyed a taxable income of approximately $76,000, who was not only presumed to know the law outlined above, but he testified that he knew there was a federal income tax law; he employed attorneys in his business affairs, and he pleaded guilty to the charge of willful failure to file a return for 1945; but in this case he relied upon his alleged ignorance of the law to sustain the burden of proof which rested upon him. All these facts and others reviewed by the trial court in its opinion clearly support the finding of the court. The taxpayer failed to show compliance with the conditions provided by statute and, therefore, failed to sustain his claim. See John F. Jelke Co. v. Smietanka, 7 Cir., 86 F.2d 470.

If we consider his testimony only, the taxpayer merely implies that he had no motive to evade paying his taxes, and in failing to make the required income tax returns. But the trial court properly concluded from his demeanor as a witness and from all the evidence that his motive was to evade paying the tax due the government.

I would affirm on the ground that the findings of the trial court on the issues submitted were not clearly erroneous, but in fact are clearly supported by the record.