## JENKINS v. UNITED STATES.

District Court, W. D. Wisconsin.    September 16, 1926.

**Army and navy ⬅51½—False statement in application for reinstatement of war risk insurance held to avoid policy.**

A knowingly false statement, made in an application for reinstatement of policy of war risk insurance, that applicant had not consulted a physician since his policy lapsed, *held* material, and to avoid the reinstated policy.

At Law.    Action by Mrs. Katherine K. Jenkins against the United States.    Judgment for defendant.

Fiedler, Garrigan & Amlie, of Beloit, Wis., for plaintiff.

W. H. Dougherty, U. S. Atty., of Janesville, Wis., and James T. Brady, Atty. U. S. Veterans' Bureau, of Washington, D. C., for the United States.

LUSE, District Judge.    This is an action upon a policy of war risk insurance, issued in 1918 to Ralph Joseph Jenkins for the sum of $10,000, by which his mother, the plaintiff, was made beneficiary.    The trial was commenced before the court with a jury, but before the close of the evidence the parties stipulated to waive the jury and submitted the issues to the court.

The insured, Ralph Joseph Jenkins, died at Stillman Valley, Ill., January 16, 1924. On November 1, 1923, the regular monthly premium of $7.50 fell due, but was not paid, nor was it paid during the 31 days of grace provided by the regulations of the Veterans' Bureau.    On December 5 the insured remitted to the Bureau the sum of $15 to pay the November and December, 1923, installments of premium.    On December 11 the Bureau, by letter, informed the insured that his remittance could not be credited in payment of the premium until the insurance had been reinstated, and inclosed a form for application for reinstatement.    On December 15 the insured filled out, signed, and sent by mail to the Bureau his application for reinstatement, in which, among other things, he said: "As a condition to the reinstatement of this insurance, I hereby certify that the answers to the following questions are true to the best of my knowledge and belief"—and answered two questions as follows:

"2. Are you now in as good health as you were at the due date of the premium in default?    Yes.

"4b. Have you consulted a physician in regard to your health since lapse of this insurance?    No."

At the close of the evidence the court announced its findings upon the only controverted questions as follows:

"The court finds that Ralph Joseph Jenkins was, on December 15, 1923, which is the date upon which he made his application for reinstatement of the policy of insurance involved in this case, in as good health as he was at the due date of the premium in default, to wit, November 1, 1923.    The evidence in this case discloses that this young man was suffering from Bright's disease, which early in January had progressed to a point where myocarditis was in an advanced stage, and the court is convinced that on October 29 and 31, 1923, Ralph Jenkins was in a serious state of health, and that on December 15th, probably due to treatment and diet, he considered his health as materially improved over what it had been late in October.

"The court further finds that, in answering question 2 of the application for reinstatement, the applicant, Ralph Joseph Jenkins, answered such question truthfully.

"The court further finds that, in answering question 4b of the application for reinstatement, the applicant answered that question falsely."

In the last finding of the court the word "falsely" is used in the sense that the answer to question 4b was untrue, and known to be untrue by the applicant.

It appeared that during the period in question the insured had consulted a physician, had taken some treatments, and was on a restricted diet under the instructions of such physician.    Under this treatment the ravages of the disease were apparently temporarily stayed; but the disease reasserted itself, resulting in the death of the insured as already indicated.    The only question in the case is the effect of the false statement made in the application for reinstatement, to the effect that the insured had not consulted a physician in regard to his health since the lapse of the insurance.

It is to be remembered, in cases such as this, that the government did not undertake to insure the lives of its soldiers for gain, nor is the policy in the ordinary sense of the term written as by an insurance company, to be construed in case of ambiguity against the insurer who prepared it.    The contract of insurance rests in the law, and the regulations issued by the Bureau under authority of law.    Regulation No. 14 was in effect during the period in question, and paragraph 7 thereof, so far as material here, reads as follows:

"7. Term insurance which has lapsed * * * may be reinstated * * * by the applicant during his lifetime, making

tender of the premiums * * * and upon compliance with the requirements of paragraph 9 hereof, under the following conditions:

"(a) Within three calendar months, including the calendar month for which the unpaid premium was due, provided the applicant is in as good health as he was at the due date of the premium in default."

The reference to compliance with the requirements of paragraph 9 contained in the foregoing is to be noted. Paragraph 9, so far as material, provides as follows:

"9. The applicant for reinstatement * * * must furnish during his lifetime a written application signed by him, which shall state that he is in as good health as at date of lapse, * * * and in addition the applicant shall furnish such evidence relative to his physical condition as may be required by the director, and on such forms as the director may prescribe."

It was pursuant to the last-quoted provision that Jenkins was furnished with the form of application above referred to. That form also contained a fifth question, reading as follows:

"If answer to question 4b is 'Yes,' state date and full particulars, including the name and address of physician."

By reason, no doubt, of the negative answer given to question 4b, question 5 was not answered. Had it been answered, the information given would have permitted the Bureau to have investigated the exact facts, and given it an opportunity to pass intelligently upon the merits of the application for reinstatement, an opportunity which in the present case was not afforded it.

True, there are some distinctions between the reinstatement of this kind of insurance and the original acceptance of the ordinary life insurance by a private insurance company. But, notwithstanding that the inquiry of the Bureau upon an application for reinstatement, where the lapse is less than three months, is not whether the applicant is in such state of health as to present a desirable insurance risk, but merely whether his condition of health is as good as it was on the date of the lapse of his policy, nevertheless the statute and the regulations, particularly the latter, which have the effect of law, disclose a purpose to permit the director to investigate and determine, with the assistance of evidence supplied by the applicant, whether or not his condition of health is as good as it was when the policy lapsed. It follows that, if the director should find that such equality of health did not exist, he might

decline to reinstate, and I see no difference between the two situations which would justify a relaxation of those rules of law which have long considered statements with reference to consultations with physicians as material to life insurance risks. Mutual Life Ins. Co. v. Hurni Packing Co., 260 F. 641 (C. C. A. 8); Mutual Life Ins. Co. v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 60 L. Ed. 1202; N. Y. Life Ins. Co. v. Wertheimer (C. C. A.) 272 F. 730; Shaughnessy v. N. Y. Life Ins. Co., 163 Minn. 134, 203 N. W. 600.

Original regulations providing the modus operandi of war risk insurance, provide that such insurance is "subject in all respects to the provisions of the Act of October 6, 1917, of any amendments thereto, and of all regulations thereunder now in force or hereafter adopted, all of which, together with this policy, *the application therefor,* and the terms and conditions published under authority of this act shall constitute the contract."

Such bulletin and regulations also provide a method of reinstatement of insurance which has terminated for failure to pay premiums. It seems quite clear, therefore, that the application for reinstatement forms a part of the contract of insurance, and that all representations which are material to the risk must accord with the truth, and in those cases where such representations are made falsely, with knowledge of their falsity, such facts will vitiate the insurance.

It should be noted that the court has found, as a fact, that Jenkins was in as good health at the time he made his application for reinstatement as he was on the due date of the premium which was in default, to wit, November 1, and the question arises as to whether this affirmative finding by the court of the existence of a fact which would have entitled Jenkins to reinstatement under the regulations, had he also truthfully complied with the requirements of paragraph 9 of Regulation No. 14 above quoted, may take the place of a determination by the Veterans' Bureau of the existence of such required state of health, based upon true and correct information required by the regulations. I think this question must be answered in the negative.

The law and the regulations contemplate an investigation and a determination of the required comparative state of health, prior to reinstatement by the director, and not after death, by a court. It is quite conceivable that the Bureau might fairly have arrived at a conclusion different from the

court, especially in view of its opportunity to examine the insured, if so desired, and have declined to reinstate. But, entirely aside from such speculations, it is to be remembered that the rights of the plaintiff in this action depend upon whether there was at the time of Jenkins' death a contract of insurance. Ostensibly there was; but it is now determined that, in the course of securing it, he falsely represented certain facts material to the risk. That vitiates the contract. The finding of the court that the ultimate comparative state of health existed does not, as I see it, prevent the avoidance of the contract by the operation of the false statements.

I am unable to avoid the conclusion that the false answer constituted a misrepresentation of a material fact, which vitiated the reinstatement, and that this action must be dismissed. Judgment may be entered accordingly.