**COLLIER v. UNITED STATES.**

Civ. No. 395.

United States District Court
W. D. Virginia, Roanoke Division.

May 3, 1950.

Arthur E. Smith, Roanoke, Va., for plaintiff.

Howard C. Gilmer, Jr., United States Attorney, R. R. Rush, Assistant United States Attorney, Roanoke, Va., for defendant,

PAUL, Chief Judge.

This is an action to recover the sum of $5,000.00 alleged to be due the plaintiff under a contract of National Service Life Insurance insuring the life of her husband, Howard E. Collier. Jurisdiction is asserted under the provisions of 38 U.S.C.A. § 445, as amended. The facts are not in dispute in any substantial respect and the case is submitted to the court on the pleadings, along with certain documentary evidence.

Howard E. Collier was in active service in the army from March 24, 1942, to November 23, 1945. During this service he was granted National Service Life Insurance in the total amount of $10,000.00, this being represented by one contract for $7,000.00 and another for $3,000.00. His wife, the plaintiff here, was the named beneficiary in both of these contracts. On this insurance he paid the premiums regularly during his military service, but on his discharge he allowed all of the insurance to lapse. The last premium payment during his service was in and for the month of November, 1945. With the one month extension, or grace period, his insurance was kept in effect through December, 1945, and definitely and finally lapsed as of January 1, 1946.

After being out of the service a little over a year the veteran, taking advantage of the right granted him to do so, decided to reinstate his insurance in a reduced amount. Accordingly under date of January 30, 1947, Collier executed an application for reinstatement of the insurance in the amount of $5,000.00. This application was upon a printed form containing blank spaces for the insertion of such information as the name of the veteran, date of discharge, service number, amount of insurance to be reinstated, amount of premium, state of health, etc. This form was furnished by the Veterans' Administration or a local representative of that agency in Roanoke, Virginia, and appears to have been filled out by or with the assistance of such local representative. Included in the somewhat extensive printed matter on the form is the following: "I understand (a) that this application must be accompanied or preceded by the tender of at least two monthly premiums (no interest) on the amount of insurance to be reinstated, one premium for the month of lapse (grace period) and one premium for premium month in which application is mailed or otherwise delivered to the Veterans' Administration. * * *"

The monthly premium on the $5,000.00 insurance was $3.45 and the two premiums required to be tendered with the application for reinstatement amounted to $6.90. The veteran's wife, the plaintiff here, drew and signed the check for payment of these premiums, but in doing so transposed the figures in the amount due and sent a check for $9.60 (instead of $6.90). The application for reinstatement was mailed from Roanoke, the veteran's residence, on January 31, 1947, together with the aforesaid check bearing the same date. The application is stamped as having been received in the office of the Veterans' Administration on February 4, 1947. A receipt was sent to the veteran but the overpayment (of $2.70) on the amount of the two premiums was not refunded. Apparently it was held by the Veterans' Administration to the credit of Collier.

Thereafter the following monthly premium payments were made by checks, which in each instance were signed by the veteran's wife and mailed to the Veterans' Administration; Check dated February 27, 1947, for $3.45; Check dated April 3, 1947, for $3.45; Check dated April 30, 1947, for $3.45. Each of these payments was acknowledged by the Veterans Administration on a form receipt mailed to the insured's address.

On the afternoon of April 30, 1947, and after the premium check of the same date had been mailed, the insured veteran died suddenly, and without warning, of a heart attack or some similar ailment. Thereafter his widow, the plaintiff, made application for payment of the insurance, which, after consideration, the Veterans' Administration refused. The present action is to enforce payment.

The defense of the Government as set out in its answer may be thus summed up. That when it received the application for rein-

statement which was mailed on January 31, 1947, accompanied by a check ($9.60) for the payment of two monthly premiums, one of these premiums was applied to the month in which the veteran had allowed his original insurance to lapse, i. e. the grace period on the original insurance; and that the second of the premiums was applied to the month of January, 1947, during which the application for reinstatement had been made; and that the overpayment of $2.70 was held "as an overage in suspense". That the check dated February 27, 1947, was applied as premium for the month of February, 1947; that no payment was made during March, 1947, and that therefore the policy lapsed on April 1, 1947. That it received the check dated April 3, 1947, but that this was after the policy had lapsed (for non-payment during March) and this amount of $3.45 "was posted in suspense"; that the check dated April 30, 1947, was also received but was likewise "posted in suspense". In summary then the contention of the Government is that the insurance was reinstated as of January 1, 1947, and that the premiums were paid through February, but, because no premium was paid in March, the insurance again lapsed on April 1, 1947; that it was not thereafter again reinstated; and that payments received after April 1, 1947, were merely "held in suspense"— whatever that term may mean. It is conceded (at least there is not even a suggestion to the contrary) that the Veterans' Administration never informed the insured of its view that the insurance had lapsed as of April 1, 1947, or that the payments made after that date were not being applied as premiums on the insurance.

The plaintiff's contention presents a quite different viewpoint on this matter. No testimony was introduced before the court but counsel for the Government admits what the plaintiff would testify if called on to do so and admits that while the Government is unable, and therefore unwilling, to stipulate the truthfulness of her statements, it has no evidence to contradict them. It is conceded that the plaintiff would testify to the following effect: That she is the widow of the insured veteran and the beneficiary under his insurance certificate, and that the checks sent in payment of the premiums were signed by her. That when the application for reinstatement was mailed on January 31, 1947, it was her understanding and that of her husband that the insurance would be reinstated as of the time when the application was received and accepted by the Veterans' Administration; that they both believed and intended that the reinstatement would become effective as of February, 1947, and that the second of the premiums included in the check sent with the application was believed and intended to be the premium for February. That she received a receipt for this payment which contained no statement as to the month to which it applied and she continued to believe that this first payment was for the month of February and that the insurance was reinstated as of that month. That thereafter she attempted to follow a practice of sending the checks for the premiums at the first of the month to which they were to apply, or a day or two before. That the check of February 27 was intended and believed to be the premium for March; the check of April 3, the premium for April; and the check of April 30 (sent before her husband's death on the same day) was meant to pay the premium for May. The plaintiff no doubt would also testify, although it would not be necessary since it is otherwise made clear, that neither she nor her husband were ever notified that the premium paid January 31 had been applied to the month of January; that none of the receipts for any of the premium payments stated anything as to the month to which they applied; that she was never notified that (as now contended by the Government) the reinstated insurance lapsed as of April 1, 1947; that she was never notified that any payments were "held in suspense"; that nothing occurred to suggest that there was any question about the insurance until her husband died and she attempted to collect it.

The plaintiff's contention as to her beliefs and intentions in connection with paying the insurance premiums seems entirely logical and I have no doubt it is true. When she mailed the application for reinstatement on the 31st day of January she knew that it would not reach the Veterans' Administration during that month. She knew also that

the insurance would not be reinstated until the Administration received the application and approved it. In mailing the application immediately before the 1st day of February and knowing that it could not be accepted until some day in February she evidently believed that any reinstatement would become effective in the month of February and she evidently intended the premium mailed with the application to apply to February. At that time there was no point in having the reinstated insurance effective for January or in going to the additional expense of paying a premium for that month. January had already passed, and the veteran no longer needed insurance protection for that month.

The defense in this case rests solely on the language (heretofore quoted) in the printed application for reinstatement which sets forth that one of the premiums then paid was to apply to the "premium month in which application is mailed or otherwise delivered to the Veterans' Administration". On the strength of the fact that the application was placed in the mails on January 31st, although not reaching the Administration until several days later, the Administration applied the premium to January—or now claims to have done so. While the application blank has various blank spaces for the entry of information pertinent to the individual case, it contains none which give the applicant an opportunity to indicate when he desires the reinstatement to become effective. That decision appears to be made by the Administration solely on the basis of the language heretofore quoted. Whether the veteran ever read this provision of the application, or if so, whether he understood what it meant, the court does not know. In any event it seems clear that he intended and believed that this premium payment was for February. And he was never notified during his lifetime that it had been applied otherwise or that he was at any time in default.

At the time this reinstatement was made the applicable statutory provision was contained in the National Service Life Insurance Act of 1940, as amended, Sect. 602(y), 60 Stat. at p. 787, as follows: "(y) (1) Any level premium term insurance which has lapsed may be reinstated within the term upon written application, payment of two monthly premiums, and evidence satisfactory to the Administrator that the applicant, subject to the provisions of the second sentence of section 602(c)(2), supra, is in good health."

It will be seen that while the statute required that two monthly premiums be tendered with the application it did not provide how they should be applied. It must be solely by virtue of some departmental rule or custom that the application of the second premium was made to the month in which the "application is mailed". No regulation promulgated by the Administration containing such a provision has been exhibited to the court and, so far as appears, it is merely an arbitrary practice. Even so there is grave question as to whether this practice is not in conflict with the intention of Congress. The National Service Life Insurance Act of 1940, 38 U.S.C.A. § 801 et seq., which authorizes the insurance of persons in the armed forces and directs that such persons be granted insurance upon their application therefor, provides in Sect. 602(p) of the Act, 38 U.S.C.A. § 802(p) under the heading "Effective date of insurance", that "(p) Such insurance may be made effective, as specified in the application, not later than the first day of the calendar month following the date of application therefor, but the United States shall not be liable thereunder for death occurring prior to such effective date."

While the statute refers to an effective date *not later* than the first day of the month following the application and does not forbid an earlier date, I think it (together with other language in the same paragraph) clearly indicates the intention that the insurance should become effective in the future (after the making of the application) and should not be retroactive to cover any period prior to the application. The insurance is granted as the result of an application which must be made before the insurance becomes effective, and the statute expressly denies any liability for loss before the effective date. I see no reason why the same reasoning and the same Congressional intent should not apply to a re-

instated policy. It may be that in providing for the payment of two premiums along with an application to reinstate Congress intended that one of these should cover the grace period under the original insurance, for which period no payment had been made for the protection given. And the Administration so applied one of the premiums. But it would seem clear that Congress intended the second premium as that which would give life and effectiveness to the insurance for a time following its reinstatement.

The mere mailing of the application did not effect a reinstatement of the insurance, nor did the sending of the premium payment along with the application. The reinstatement depended on the application being accepted or approved and the authority of the Administration to approve it was dependent on a showing, in the application, that the applicant was in good health. In the absence of such a showing it was the duty of the Administration to decline to reinstate.

This is confirmed by certain significant language in the printed application signed by the veteran. In addition to that heretofore quoted we find the following: "Further, I understand that premiums must be remitted each month as they become due *while the application is receiving consideration* in order to prevent a subsequent lapse of this insurance." (Emphasis supplied.) This is a clear recognition by the Administration itself of the fact that reinstatement was not effected merely by submitting the application but only after the application had been considered and found to meet the conditions permitting reinstatement.

As pointed out in Jenkins v. U. S., D.C., 24 F.2d 452, 453, in the reinstatement of war risk insurance, "The law and the regulations contemplate an investigation and a determination of the required comparative state of health, prior to reinstatement by the director * * *". And I find reference to 5 Dec. U. S. Comp. Gen. (full text not available) holding that reinstatement of a war risk insurance policy is effected when the Bureau has determined that all the conditions precedent fixed by the statutes for reinstatement have been met, and not from the date when the applicant was required to pay premiums to make such reinstatement effective.

In the instant case it was only when on February 4th the Administration received the application and determined that it met the conditions justifying reinstatement that it acted to reinstate the insurance. But when it did so it applied the premium to cover a period of time already past, during which the insurance had not been in force, during which the insured had had no protection, and during which the Government had incurred no risk. The attempted justification for this is that when the application was dropped in the mails the month of January still had eight hours to run. But this justification relies on a mere practice adopted by the Administration which rests on no statutory authority and is, I believe, contrary to the statutory intent. And even though the practice is ambiguously referred to in the application signed by the veteran, this cannot in my opinion, give the right to apply his premium payment to a period prior to the effective date of the insurance and during which the veteran was not insured.

The case of MacDonald v. Metropolitan Life Ins. Co., 304 Pa. 213, 155 A. 491, 492, 77 A.L.R. 353, presents a situation which, while not identical with this, called forth certain statements of the court which are pertinent here. In that case there was an accident insurance policy expiring by its terms on January 18, with a grace period of 31 days, and containing provisions for reinstatement in case of a lapse. No premium was paid during the grace period and the policy lapsed on February 18. Some days thereafter the required premium was forwarded and the policy reinstated. In denying the contention later made by the insurer that the reinstatement was effective from January 18, the court said that to uphold this view would be "to pay the company for a risk during the six weeks which it did not incur. * * * 'If the contention of defendant is sound, then MacDonald, for the payment of the six months' premium, received insurance for only four months and eighteen days." And in Fallis v. Massachusetts Bonding etc. Co., 210 Mo. App. 579, 243 S.W. 217, 218, the court held

that a premium payment reviving a policy after lapse applied to the future, and that after the policy had lapsed "a subsequent payment cannot be held to cover a period of time during the lapse when the policy was not in force, for that would require the insured to pay something for nothing, and would therefore be without consideration. There can be no premium past due or otherwise to cover a time when the policy was not in force."

If the principles applicable to insurance contracts generally were to be applied to insurance granted by the Government, there appear abundant other reasons why liability for this insurance should be enforced, even upon the Government's own contention as to the application of the premium payments. This veteran submitted his application with the intention and belief that, if approved, his insurance would be reinstated with the month of February and forwarded, by check, the premium in payment therefor. Thereafter he received acknowledgement of his payment on a form which contained notations in pencil of his serial or service number, and the date and amount of his check and the following language in print: "This remittance if honored on presentation for payment will be applied to your account in accordance with the National Service Life Insurance Act of 1940, as amended, and regulations of the Veterans Administration pertaining thereto." This receipt made no mention of the month to which the premium was applied or of any other information relating to the insurance. Thereafter the veteran continued each succeeding month to send checks for the required premium, mailing them around the first of the month for which he intended and believed they would apply. For each of these payments he received an acknowledgement in the identical form of that referred to above. He went along in confidence that he was keeping his insurance in effect and in the belief that his prompt payments would assure this. Never, during his lifetime, by the receipts sent him or otherwise, did the veteran have any intimation that his initial premium had been applied to January and that he was, therefore, in danger of becoming in default. No policy or certificate was sent him showing

that the Administration had undertaken to relate the insurance back to January 1st. He was never notified that the Administration considered his insurance to have lapsed at the end of March and that payments thereafter were being "held in suspense" and not applied as premiums, and he received no return of these payments. The gross injustice done the insured and his beneficiary by this whole procedure is obvious. If he had known that the initial premium had been applied to January he could easily have paid an additional premium and solved any difficulty; or even if he had later known that his insurance was treated as lapsed on March 31 he could have paid an additional premium and again reinstated the insurance. It is disturbing to think that if the veteran had not died when he did the course of events disclosed here might have gone on indefinitely; with the insured paying his premiums regularly each month in complete confidence that he was keeping his insurance in force and with the Administration keeping his money and never telling him otherwise; with the result that at his death perhaps years later, his beneficiary would find for the first time that the insurance had lapsed after March, 1947, and that the payments made after that time had merely been "held in suspense".

If we were dealing with a commercial insurance company there would seem no doubt that on the above facts the insurer would be bound even if there had been a lapse of the insurance on March 1st. The acceptance of premiums thereafter would, under well settled rules, have constituted a waiver of the default and estopped the insurer from denying that the insurance remained in force.

However the weight of authority is that in the issuance of war risk insurance the government is not to be regarded or treated in all respects as an ordinary insurance company, and that there are many circumstances which might impose liability upon a commercial insurer but which would not so affect the government. The distinction rests in the main upon the principle that the government cannot be estopped by the acts of its agents. But the authorities are not clear as to just how far this distinction goes or

in what particular respects it applies. See Standard Oil Co. v. U. S., 267 U. S. 76, 45 S.Ct. 271, 69 L.Ed. 519; White v. U. S., 270 U. S. 175, 46 S.Ct. 274, 70 L.Ed. 530; Wilber Nat. Bank v. U. S., 294 U. S. 120, 55 S. Ct. 362, 364, 79 L.Ed. 798.

The case of Wilber Nat. Bank v. U. S. supra is cited by the Government in support of its position in the instant case that estoppel does not operate against the Government. However examination of the case shows that the court left undecided the question of whether the Government might be estopped in a war risk insurance case for the reason that, in its opinion, the facts did not present any basis for a claim of estoppel or waiver. After noting "the general rule that the United States are not bound nor estopped by the acts of their officers and agents", the court says: "How far, if at all, these general rules are subject to modification where the United States enter into transactions commercial in nature (Cooke v. U. S., 91 U. S. 389, 399, 23 L.Ed. 237; White v. U. S., 270 U. S. 175, 180, 46 S.Ct. 274, 70 L.Ed. 530) we need not now inquire. The circumstances presented by this record do not show that the assured was deceived or misled to his detriment, * * *. The grounds upon which estoppel or waiver are ordinarily predicated are not shown to exist."

In that case, Wilber Nat. Bank v. U. S., the veteran had applied on July 1, 1927, for reinstatement of his insurance, accompanying his application with an amount which paid the premiums for July and August. Quite clearly he intended and expected the reinstatement to become effective beginning with the month of July. The insurance was reinstated as of July and some time later (during September) a policy was delivered to the veteran which specifically stated that it was effective as of July 1st, showed payment of the premiums paid, and called attention to the fact that like premiums were due on the first of each succeeding month. In the meantime the veteran, even after receiving the policy and with full information as to his duties under it, made no further remittances until in November, when he forwarded the amount of one monthly premium, and in December a like amount.

He died a few days after the last payment. The court pointed out that his initial payments covered the months of July and August and that, counting the grace period, the insurance was effective through September, but finally lapsed on the last of the latter month. The insured having received his policy in September (during the grace period) informing him of the effective date of the policy and of his obligations to pay premiums each month, had opportunity during the grace period to pay the premium and thus keep his insurance alive. He failed to do so. It was this no doubt which led the court, in discarding any question of estoppel, to say that the insured "was [not] deceived or misled to his detriment" and that "the grounds upon which estoppel or waiver are ordinarily predicated are not shown to exist".

The cited case presents a distinctly different state of facts from that which we have here. In the instant case the veteran, intending and believing that his reinstated insurance became effective as of February and never being notified of anything to the contrary, continued to pay regularly and promptly until his death the amounts which he believed were keeping his insurance in force and which the Administration acknowledged and retained without any intimation to him that this was not the case. If there was ever a case where waiver and estoppel could be invoked against the Government this is it.

However, in holding that the plaintiff is entitled to recover, I prefer, in view of the lack of definite authority on the question, not to rest that conclusion on the principle of estoppel, but upon the ground first discussed in this opinion. It is my opinion that, inasmuch as the insurance could not be reinstated until the application therefor had been received and approved and that this receipt and approval was not until some time in February, the insurance could not have been made effective for any time previous to that month. That the action of the Administration in applying the initial premium to the month of January only because the application was mailed within the last few hours of that month was based solely on an administrative practice having no

sanction or authority in law. That in doing so it not only disregarded the intent of the insured but applied the premium to a past period during which the insured had had no protection and during which the insurance had not been in force. In other words, the initial premium was properly and legally applicable to the month of February and, all premiums thereafter due having been promptly paid, the insurance did not lapse at any time and was in force at the time of the veteran's death. The plaintiff is entitled to judgment.