Renaud Ouellette and Lucille Ouellette v. Commissioner.
Ouellette v. Commissioner
Docket No. 5095-69
United States Tax Court
T.C. Memo 1971-98; 1971 Tax Ct. Memo LEXIS 233; 30 T.C.M. (CCH) 390; T.C.M. (RIA) 71098; May 6, 1971, Filed. Sherman F. Levey, 950 Crossroads Office Bldg., Two Main St. East, Rochester, N. Y. for the petitioners. Stephen M. Miller, for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: Respondent, under the authority of section 6653(b), [1] determined additions to petitioners' income tax for the taxable years 1963, 1964, and 1965 of $1,071.11, $492.50, and $757.50, respectively. The sole issue to be decided is whether petitioners possessed the fraudulent intent necessary to warrant the asserted additions to tax. *234 Findings of Fact Some of the facts have been stipulated and are, together with the exhibits attached 391 to the stipulation of facts, incorporated herein by this reference. Petitioners, husband and wife, filed delinquent Federal income tax returns for the taxable years 1963, 1964, and 1965 with the district director of internal revenue, Buffalo, New York. The returns for each year were filed on October 29, 1968, March 10, 1967, and March 10, 1967, respectively. At the time of filing the petition in this case petitioners resided in Rochester, New York. With the exception of 1965 during which year she had $95 of separate income, petitioner Lucille Ouellette had no separate income and is a party to this action only by virtue of having filed joint returns. Renaud Ouellette will hereafter be referred to as petitioner. Petitioner was born in the Province of Quebec, Canada, in 1924. His formal schooling consisted of a fifth grade education in a French speaking school which he left at age 13. From the time of leaving school until his arrival in the United States in 1941 he was employed in various unskilled jobs in Canada. In September of 1941 petitioner arrived in the United States *235 and located employment as a factory worker. He continued that employment until 1943 at which time he entered the United States Army. It was during this time of service that petitioner, for the first time, learned to speak, read, and write English. He was honorably discharged from the Army in 1946 and has continuously resided in the United States since that time. After his discharge petitioner, in addition to being employed in an unskilled labor capacity secured a position as an apprentice in the dry wall finishing trade. From completion of his apprenticeship in or about 1953 to the present, petitioner has undertaken various positions as a dry wall finisher, either as an employee or at times as an independent contractor. While the nature of his work remained constant the locality of his employment fluctuated until 1961 when he moved to Rochester, New York. With the exception of one brief stay in Connecticut during the winter of 1961-1962 petitioner has continuously resided and worked in the Rochester area since his arrival in 1961. In 1963 petitioner contacted Preston Vaden, a public accountant. The initial contact was for the purpose of acquiring advice as to filing petitioner's *236 1962 tax return. However, when petitioner apprised Vaden that he had not filed returns for 1959, 1960, and 1961, petitioner was told of the gravity of his omission, was referred to legal counsel, and the returns for all three years were prepared and filed on June 13, 1963. His return for taxable year 1962 was delinquently filed on July 30, 1963. The taxes owed for all years, together with interest and delinquency penalties, were assessed and paid. Again for taxable years 1963, 1964, and 1965 petitioner failed to timely file his income tax returns. In the latter part of 1966 petitioner was contacted by Robert Salisbury, a special agent of the Internal Revenue Service, who notified petitioner that a review of the district director's files revealed that no returns had been filed for the years in question. Petitioner readily admitted that he had failed to file returns, and that he knew he had a tax liability and was required to file timely returns. Upon being contacted by Salisbury, petitioner again consulted his accountant, Vaden, and at Salisbury's request, without undue hesitation, petitioner (through his accountant) furnished to Salisbury all books and records in his possession that *237 were helpful in reconstructing petitioner's income. While the records were disorganized and incomplete, consisting primarily of check stubs, their inadequacy was mitigated by petitioner's full oral disclosure of any items not adequately revealed by his records. Between the records provided and the additional information volunteered by petitioner, Salisbury was admittedly able to accurately reconstruct petitioner's income for the years in question. When first approached by Salisbury petitioner explained that his failure to file was due to a lack of funds with which to pay the tax owed. He also admitted, however, that he was aware that inability to pay the tax did not excuse the failure to file returns. In February of 1966 petitioner purchased a new automobile, trading in a truck as downpayment and financing the balance. Petitioner's income having been reconstructed for taxable years 1963, 1964, and 1965, delinquent returns were filed for those years on October 29, 1968, March 10, 1967, and March 10, 1967, respectively. On June 24, 1968, an information was returned in the Western Judicial District of New York charging petitioner with willfully failing to file income tax returns *238 for the three years here involved. [2] Petitioner 392 entered a plea of guilty with respect to taxable year 1965 and was fined $1,000. The charges for 1963 and 1964 were subsequently dismissed Opinion The only question presented is whether petitioner possessed the fraudulent intent necessary to justify imposition of the 50 percent fraud penalty under section 6653(b). [3] The burden of proof on this issue is squarely on the respondent and can only be met by establishing with clear and convincing evidence that petitioner possessed the requisite fraudulent intent to evade or defeat a tax known to be owing. See sec. 7454; Mitchell v. Commissioner, 118 F. 2d 308 (C.A. 5, 1941); and Frank Imburgia, 22 T.C. 1002 (1954). *239 Failure to file tax returns, alone, is not a sufficient basis for finding fraud. Cirillo v. Commissioner, 314 F. 2d 478 (C.A. 3, 1963), affirming in part a Memorandum Opinion of this Court; and First Trust & Savings Bank v. United States, 206 F. 2d 97 (C.A. 8, 1953). Such a failure is merely one factor to be considered and only when, together with other circumstances surrounding the nonfiling, a fraudulent motive is clearly and convincingly established is a finding of fraud warranted. Cirillo v. Commissioner, supra.The respondent has failed to produce sufficient evidence to convince this Court of the existence of fraud and consequently does not satisfy his burden of proof. We are quite aware that petitioner in failing to file was grossly negligent. We also have taken into consideration respondent's assertion that the sole reason given for not filing was petitioner's belief that he was unable to pay the tax. This, however, is, at best, inapposite as evidence of a fraudulent intent. Petitioner had no sooner afforded the explanation, when he readily admitted that prior experience had taught him that inability to pay provided no excuse for *240 failing to file. The circumstances indicate that this explanation was given to Salisbury more as petitioner's own reason for not filing, not as a legal excuse or as any effort to mislead or deceive respondent. Respondent attempts to disprove petitioner's explanation by showing that in February 1966 petitioner purchased an expensive automobile and consequently could not have been so impoverished as to be unable to pay his taxes. Even if respondent's contention were well taken, it would show no more than petitioner's belief of his financial inability was ill-founded, not as respondent contends, that his statement was a deliberate and calculated effort to deceive. Respondent's contention, however, is not adequately supported by evidence and must be rejected. That petitioner purchased an automobile in February 1966 is weak evidence of his financial strength in 1965 and is of no value with respect to prior years. Where, as here, the purchase was made by making a downpayment with a trade-in and financing the rest, the evidentiary value of the purchase is, for all practical purposes, nonexistent. The only other evidence offered by respondent as supporting his assertion of a fraudulent intent *241 is the disorganized and inadequate fashion in which petitioner maintained his books and records. While the state in which a taxpayer maintains his financial records can in some circumstances evidence a fraudulent intent, such is the case only where respondent demonstrates that their insufficiency is attributable to a fraudulent motive or where the records themselves have been altered or are so inadequate as to indicate that their faulty maintenance, to some degree, is attributable to an intent to defraud the government. See Cirillo v. Commissioner, supra.Even in this latter case a holding of fraud is only justified when the records are such that together with the failure to file, and/or other evidence, they provide clear and convincing evidence of fraud. In the case now before us the records kept by petitioner, while inadequate, do not, even when considered in light of his failure to file, furnish the clear and convincing evidence necessary to impose the fraud penalty. We believe the state of his records is more attributable to a lack of sophistication in business matters or to negligent disregard of the record-keeping requirements than to an effort to evade and defeat *242 the payment of taxes. If they suggest any fraudulent intent at all, it is in the present circumstances insufficient to carry respondent's heavy burden. 393 We also note that any weight accorded the evidence of respondent must be balanced against the prior conduct of petitioner of failing to file returns in prior years and subsequently voluntarily filing delinquent returns and paying the taxes, interest, and delinquency penalties, which we believe tends to negate any inference of an intent to defeat or evade the payment of taxes in the years in question. Decision will be entered for the petitioners. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954.↩
2. The charge was made under the authority of sec. 7203, I.R.C. 1954↩.
3. SEC. 6653. FAILURE TO PAY TAX. (b) Fraud. - If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In the case of income taxes and gift taxes this amount shall be in lieu of any amount determined under subsection (a).↩