Philip E. DePumpo and Mary DePumpo v. Commissioner.
De Pumpo v. Commissioner
Docket No. 5185-69.
United States Tax Court
T.C. Memo 1971-115; 1971 Tax Ct. Memo LEXIS 217; 30 T.C.M. (CCH) 491; T.C.M. (RIA) 71115; May 19, 1971, Filed Sherman F. Levey, 950 Crossroads Office Bldg., 2 Main St. E., Rochester, N. Y., for the petitioners. Stephen M. Miller, for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: Respondent, under the authority of section 6653(b), [1] determined additions to petitioners' income tax for taxable years 1961, 1962, 1963, and 1964 in the amounts of $210.07, $327.70, $590.45, and $877.63, respectively. *218 The sole issue to be decided is whether petitioners possessed the fraudulent intent required by section 6653(b). Findings of Fact Some of the facts have been stipulated and are, together with the exhibits attached to the stipulation, incorporated herein by this reference. Petitioners, husband and wife, filed delinquent income tax returns for taxable years 1961 through 1964 with the district director of internal revenue, Buffalo, New York. Delinquent returns for all four years were filed on June 13, 1968. At the time of filing the petition in this case petitioners resided at Corning, New York. Petitioner Mary DePumpo had no separate income from any source and is a party to the action only by virtue of having filed joint returns for the years in question. Philip DePumpo will hereafter be referred to as petitioner. Petitioner, majoring in accounting, received a Bachelor of Science degree from Syracuse University in 1942. He subsequently graduated from Georgetown University Law School and was admitted to practice law in New York State in 1949. From that time until the present petitioner has been engaged in *219 the private practice of law in Corning, New York. In addition to his private practice, petitioner was employed as legal counsel by the City of Corning and received as compensation $3,600 for each of the four years in question. The City of Corning deducted from petitioner's pay the proper amounts for income tax withholding and each year sent timely W-2 forms to petitioner, which he received. While petitioner's income was clearly sufficient to require the filing of returns, and petitioner was aware of this, no returns were filed for taxable years 1961 through 1964 until June 1968. In August of 1965 petitioner was contacted by Robert Salisbury, a special agent of the Internal Revenue Service. Salisbury informed petitioner that a search of the district director's files revealed that returns had not been filed for the years in question. At this point petitioner readily and openly admitted that returns had not been filed. Further, upon request, petitioner furnished the special agent with all available books and records for the purpose of reconstructing petitioner's income. Petitioner also met on several occasions with the special agent, willingly answering all questions that he could to *220 assist in reconstructing his income. The records maintained by petitioner were incomplete and kept in an unorganized fashion. Once assembled and analyzed, however, they accurately reflected petitioner's income with only insubstantial variances. Petitioner attributes his failure to file returns to a lack of funds to pay the tax at the time returns were due and secondly to the demands of his law practice which were such that he was deprived of the time necessary for him to compute his income and prepare the returns. Petitioner has a history of failing to file timely returns. His returns for 1952 through and including 1960 (with the single exception of 1955) were all filed delinquently. In each instance petitioner voluntarily prepared delinquent returns computing his tax, interest, and delinquency penalties and forwarding the amount owed to the Internal Revenue Service. All of these returns and payments were made without petitioner ever having been contacted by the governmental authorities. In the course of petitioner's law practice he periodically had in his employ both secretaries and other attorneys. As an employer he was required to and did file timely withholding statements *221 on his employees with the district director of internal revenue. Petitioner also participated in a joint venture which was required to file a partnership return. For the years in question petitioner prepared the returns for the joint venture and saw to it that they were timely filed. While the returns showed an overall loss, petitioner's name did appear on them as a partner or participant. As a result of Salisbury's investigation, an information was returned against petitioner in the Western Judicial District of New York on charges of willful failure to 493 file his income tax returns for taxable years 1961 through 1964 in violation of section 7203. On February 12, 1968, he pleaded guilty to the charges brought against him with respect to 1964 for which he was fined $1,000. The charges were dismissed for 1961 through 1963. Respondent now asserts that petitioner's failure to file returns was due to fraud and seeks to impose the 50 percent penalty provided by section 6653(b). Opinion The only issue herein is whether petitioner is subject to the 50 percent fraud penalty imposed by section 6653(b). [2] *222 The burden of proving fraud is, of course, on the respondent, who must show by clear and convincing evidence that petitioner specifically intended to evade a tax known to be owing. See sec. 7454, I.R.C. 1954; Mitchell v. Commissioner, 118 F. 2d 308 (C.A. 5, 1941); Frank Imburgia, 22 T.C. 1002 (1954). Failure to file tax returns, without more, is not a sufficient basis for finding fraud. Cirillo v. Commissioner, 314 F. 2d 478 (C.A. 3, 1963), affirming in part a Memorandum Opinion of this Court; First Trust & Savings Bank v. United States [53-2 USTC 9496], 206 F. 2d 97 *223 (C.A. 8, 1953). It is but one factor to be considered, and only where circumstances surrounding the failure to file clearly and convincingly establish the existence of fraud is such a conclusion warranted. Cirillo v. Commissioner, supra.The respondent has not made the requisite showing in the case now before us and hence fails to satisfy his burden of proof. The circumstances surrounding petitioner's failure to file tax returns are as follows: (1) Petitioner is an intelligent, well educated man and entirely aware of his responsibility to file tax returns; (2) for the years in question petitioner was aware that returns should have been filed, nonetheless he neglectfully, willfully, or perhaps intentionally failed to do so; (3) petitioner's books and records were kept in an unsystematic and disorganized fashion; and (4) the reasons for failing to file timely returns were that petitioner believed he had insufficient funds to pay the tax owed and that the demands of his law practice were such that he did not have time to prepare the returns when due but that he intended to assemble his records and prepare the returns later. The facts of this case are strikingly similar *224 to those of Cirillo, supra. There a lawyer was employed by a city government and maintained a private practice as well. He failed to file tax returns for 10 years. In addition, his books and records were maintained in an inadequate and disorganized manner, and the taxpayer was aware of his duty to file returns. The only discernible difference between Cirillo and the case before us lies in the explanation given for failing to file. Cirillo claimed that his rough estimates led him to conclude that he owed no tax for any of the years there in question, i. e., that his withholding from the municipal employment would cover any tax liability. Petitioner here, on the other hand, maintains that his time did not permit the filing of timely returns and that he intended to prepare returns and pay the tax later. We will disregard petitioner's excuse as to lack of funds since a man of his knowledge and background no doubt knew that inability to pay the tax owed is not a basis for failing to file. The respondent in Cirillo based his case on the dual grounds that, first, taxpayer's contention that he believed no taxes were owed was untrue and, secondly, that taxpayer's failure to keep *225 systematic and detailed records of income and expenditures evidenced a fraudulent intent. In addressing itself to the first contention, the circuit court said, at p. 482: Taxpayer contends that his willful failure to file was not and could not have been the result of a scheme to cheat the government out of taxes which he was obligated to pay, because he did not believe that he owed any taxes. We are aware that the Tax Court disbelieved this testimony and that it is not for this appellate court to assess taxpayer's credibility as a witness. However, the Commissioner's heavy burden of proof on the issue of fraud cannot be satisfied by mere disbelief of taxpayer's testimony. The record must contain some convincing affirmative indication of the required specific intent. In the case now before us we really never reach the question faced by the circuit court in Cirillo since here petitioner's testimony, supported by previous conduct regarding 494 late filing of returns, is worthy of credibility. While petitioner's intentional disregard of the rules and regulations requiring timely filing is certainly culpable, his intention to compute his income and file returns at a later date, *226 as he had made a practice of doing in prior years, belies any fraudulent motive to evade or defeat the tax owed. Absent such a fraudulent intent, willful neglect or intentional disregard of the tax laws justifies a penalty under section 6651(a) or 6653(a), but is not sufficiently grievous to warrant imposition of the 50 percent fraud penalty. With respect to respondent's second contention regarding the sketchy records kept by taxpayer in Cirillo the circuit court said, at p. 483: Apart from evidence which, as already pointed out, builds a very strong case of willful failure to file without demonstrating the intent which accompanied that failure, the only evidence offered by the Commissioner was the taxpayer's failure to keep systematic and detailed records of income and expenditures of his law practice. The significance of this omission is minimized by the fact that from 1945 through 1951, taxpayer's practice was very small, never yielding receipts in excess of $2200 in any year and, in several years, yielding less than $1000. Indeed, government agents conceded that, even without such records, *227 they were able to determine the amount of taxpayer's earnings from bank deposit statements retained by him, and that there was no indication that taxpayer had received additional income not reflected in these statements. Thus, the only needed information which was lacking because of the taxpayer's failure to keep books was a record of the expenditures which he made in the regular course of his law practice. In these circumstances, any inference that taxpayer's unbusinesslike procedure was intended to conceal tax liability is too weak to achieve the clear and convincing character which proof of fraud must exhibit. While petitioner's law practice is not small, compared to the income in Cirillo, [3] the records were admittedly sufficiently accurate to enable government agents to reconstruct and compute petitioner's income for the years in question. For inadequate records to constitute evidence of fraud, it must be shown that their inadequacy or inaccuracy was calculated by the taxpayer to aid or facilitate him in evading taxes. Where, as here, the records merely show that petitioner maintained *228 a careless attitude toward his financial affairs, such records do not support a finding of fraud, and in any case fall far short of the fradulent intent. With respect to taxable years 1951, 1952 and 1953 (the last three years involved in Cirillo) the circuit court upheld imposition of the fraud penalty. To the extent that the Cirillo case found the taxpayer guilty of fraud it is distinguishable from the case now before us. The court founded their holding on the basis that in the later years the taxpayer received income sufficient in amount to make the taxpayer's claim that he believed no taxes were owed incredible. Since his only reason for failing to file was that he believed no tax was owing, once this assertion was rejected the door was opened for a finding of fraud. In this regard the court said, at p. 483: Thus, the record indicates that at the end of 1952 and thereafter, *229 even a rough calculation, honestly made, would at least have shown the taxpayer that there was need for a more careful analysis of income and expenditures to substantiate or dissipate his hope that no additional taxes were due. His disingenuous avoidance of accurate knowledge when the need for such knowledge must have been apparent was in itself a substantial indication of fraudulent intent. The situation is quite different where the reason for failing to file is an intention to file and pay at a later time rather than a belief that no taxes were owed. Increases in a taxpayer's income, while tending to disprove a belief of no tax liability, have no effect on a taxpayer who admittedly knows a tax is owing but can demonstrate to our satisfaction that his intention was to file his returns and pay the taxes owing at a later time. Respondent argues that petitioner's reasons for failing to file are patently false and that this, coupled with the failure to file, is sufficient to establish fraud. Since we believe petitioner as to why he did not file returns, we need not decide whether 495 *230 patent falsity is sufficient to establish fraud. However, we think it necessary to point out that where a taxpayer's explanation for failing to file is merely inadequate, it does not automatically follow that a finding of fraud is justified. Some affirmative evidence of fraud must be shown by respondent. Such a showing may be made where, as in Cirillo, the evidence disproving the taxpayer's excuse is so damaging and convincing as to itself constitute evidence of fraud. On the other hand, where petitioner's explanation is merely inadequate, this, even when coupled with the failure to file, does not constitute the requisite clear and convincing proof necessary for respondent to meet his burden. In view of petitioner's educational background, membership in the legal profession, and experience in the laws of Federal taxation, his callous disregard of the obligation to file timely returns is deserving of our most severe reproach. The law, however, provides specific sanctions, both penal and civil, for willful failure to file a return or pay a tax. Before these wrongful failures may be translated *231 into fraud as well, there must be clear and convincing evidence of fraudulent intent. For the foregoing reasons we are satisfied that petitioner's failure to file timely returns for taxable years 1961, 1962, 1963, and 1964 was not due to a fraudulent intent to evade or defeat the payment of taxes. Decision will be entered for the petitioners. Footnotes
1. All section references are to the Internal Revenue Code of 1954.↩
2. SEC. 6653. FAILURE TO PAY TAX. (b) Fraud. - If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In the case of income taxes and gift taxes, this amount shall be in lieu of any amount determined under subsection (a).↩
3. Petitioner's delinquent income tax returns for the years in question show that his practice produced income in the following amounts: ↩
Gross Receipts
Net Profits
1961
$14,319.44
$ 3,810.59
1962
20,624.54
8,053.81
1963
18,188.53
2,582.27
1964
26,947.06
11,547.53