ALBERT DiPIAZZA, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Di Piazza v. Commissioner
Docket No. 8303-75.
United States Tax Court
T.C. Memo 1978-422; 1978 Tax Ct. Memo LEXIS 92; 37 T.C.M. (CCH) 1749; T.C.M. (RIA) 78422; October 19, 1978, Filed *92 Petitioner failed to file his 1966 income tax return and delinquently filed his 1967, 1968 and 1969 returns after being contacted by a revenue agent. The 1967 and 1968 returns omitted any income from the sale of precious metals. Held, petitioner received $ 69,811.43 and $ 6,606.37 in unreported pross income in 1967 and 1968, respectively. Held further, part of the underpayments in 1967 and 1968 was due to fraud within the meaning of sec. 6653(b), I.R.C. 1954. Held further, petitioner is liable for penalties under secs. 6651(a) and 6653(a), I.R.C. 1954, for 1966. Anthony J. Filosa and Joseph A. Lamendella, for the petitioner. David P. Fuller and Harmon B. Dow, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined the following deficiencies and additions to tax in petitioner's income taxes: Additions to Tax Year
Deficiency
Sec. 6651(a) [1]
Sec. 6653(a)
Sec. 6653 (b) [2] *93 1966 $ 498.42
$ 55.11
$ 24.92
0
1967
36,762.37
0
0
$ 18,675.12
1968
1,816.38
0
0
1,275.33
1969
0
440.00
The issues before us are: [3] 1. Whether the petitioner received unreported income from the sale of precious metals in the amounts of $ 69,811.43 and $ 6,606.37 for the tax years 1967 and 1968, respectively; and 2. Whether any part of the underpayments of income tax for 1967, 1968, and 1969 was due to fraud with intent to evade tax. FINDINGS OF FACT Some facts were stipulated and are found accordingly. Albert DiPiazza, Jr., resided at 400 East Randolph Street, *94 Chicago, Illinois, when he filed his 1967, 1968, and 1969 Federal income tax returns with the Internal Revenue Service Center, Kansas City, Missouri, and when he filed his petition in this case. During the taxable years 1967, 1968, and 1969, petitioner resided at 1443 Jarvis Avenue, Chicago, Illinois. Petitioner did not file a Federal income tax return for his tax year 1966.His returns for 1967 and 1968 were filed on September 2, 1970, and his return for 1969 was filed on December 7, 1970. Petitioner neither requested nor received any extension of the statutory filing dates for his 1967, 1968, and 1969 returns. During 1966, 1967, 1968, and 1969, petitioner was employed by the Goldsmith Division of the National Lead Company (hereinafter National Lead), Chicago, Illinois. His employment involved the purchase and sale of precious metal scrap. He received taxable wage income from National Lead in the following amounts for the following years: Year
Amount
1966
$ 5,291.66
1967
5,762.46
1968
6,264.56
1969
6,800.00
These wages were reflected on W-2 forms sent to petitioner by National Lead prior to the date on which petitioner's Federal income tax returns for the years here in question were due *95 to be filed. During the years here in question, petitioner maintained a checking account in his own name (hereinafter personal account) and a checking account under the name of A. A. Albert Chemical Company (hereinafter Chemical account) at the Michigan Avenue National Bank of Chicago. During 1967 and 1968, the Simmons Refining Company (hereinafter Simmons Co.) of Chicago, Illinois, was engaged in the business of recycling precious metal scrap. On November 27, 1967, petitioner sold approximately one and a half tons of precious metal scrap to Simmons Co. and received the following checks made payable to himself: Check No.
Date Issued
Amount
12291
12/5/67
$ 31,000.00
12396
12/13/67
19,000.00
12480
12/19/67
9,811.43
12544
12/27/67
10,000.00 Each of these checks was received, endorsed and negotiated by petitioner on the date of its issuance, or one or two days thereafter. Except for $ 300 in cash, which petitioner returned, the proceeds from check No. 12544, dated December 27, 1967, were deposited to petitioner's personal checking account on December 29, 1967. On April 29, 1968, petitioner made another sale to Simmons Co. receiving $ 4,311.20 on April 30, 1968. Pursuant to petitioner's request, *96 the alias "A. Albert" was used on all documents connected with this transaction, including the above check. Upon receipt, petitioner endorsed this check first in the name of A. Albert and then in his own name after which he deposited it in his personal checking account. On July 2, 1968, petitioner made a further sale to Simmons Co. receiving their check made payable to him in the amount of $ 2,295.17. Petitioner directed Simmons Co. to make the purchase order in the name of Jack Bayers even though the check on the sale was made payable to petitioner. Upon receipt of the check, petitioner endorsed and cashed it. He deposited $ 1,895.17 of the proceeds in his personal checking account on July 2, 1968. Petitioner maintained absolutely no records of his 1967 and 1968 transactions with the Simmons Co.
In May 1970, Revenue Agent David L. Walker was assigned to investigate the income tax liability of petitioner for the years in question. On June 1, 1970, Walker first contacted petitioner at his office and questioned him about the filing of his 1967 Federal income tax return. Petitioner told Walker that he had filed his 1967 return and he proceeded to search his desk drawer for an alleged *97 retained copy of that return. Since he was unable to produce a copy of the return at that interview, he requested additional time to search for a copy of the return at his home. On August 21, 1970, Walker again visited petitioner at his office and inquired about the 1967 return. At that meeting petitioner admitted to Walker that he had, in fact, not filed his 1967, 1968, and 1969 returns. Petitioner was aware that he had not filed these returns prior to the June 1, 1970, meeting. On August 27, 1970, Walker again contacted petitioner to ascertain whether or not his delinquent returns for the years 1967, 1968, and 1969 had yet been prepared and filed. He indicated that his returns were not yet filed but that he would mail the returns to the proper service center. In that conversation, Walker informed petitioner that if he had omitted any deductions to which he was entitled that he could correct the error by filing an amended return. On September 2, 1970, petitioner filed his 1967 and 1968 returns and on December 7, 1970, he filed his 1969 return. These returns reported only petitioner's wage income from the National Lead. The 1967 and 1968 returns did not report any income *98 from the Simmons Co. transactions and did not in any manner reveal the existence of precious metal sales to Simmons Co. In addition, petitioner had not disclosed the existence of the transactions with Simmons Co. in his conversations with Walker. On February 25, 1971, Special Agent Accardi and Revenue Agent Walker contacted petitioner at his office and questioned him about the contents of his delinquently filed returns for 1967, 1968, and 1969. Petitioner was shown either the original or copies of these returns as filed. He identified the three returns as being his returns and said that he personally had prepared them and that he had included all of his income and deductions.He stated that he had no other source of income and, because of his frequent heart attacks, he was unable to earn anymore than he showed on the returns. Petitioner was then shown a cancelled check issued by Simmons Co. on April 30, 1968, in the amount of $ 4,311.20 payable to A. Albert and asked if he recognized it. He admitted that the second endorsement on the check was his and, after first stating he did not know A. Albert, he further admitted that he had also signed the first endorsement of A. Albert. *99 He indicated he thought that A. Albert was from Milwaukee, Wisconsin. He stated Albert's sale was rejected at National Lead so petitioner contacted Simmons Co. who purchased the scrap. Petitioner indicated that the check was not made payable to the actual owner of the scrap so that he would be able to personally cash the check and deduct his commission before turning over the proceeds to Albert. Petitioner stated that his commissions ranged from$ 100 to $ 300 on the Simmons transactions, and that he simply forgot to include the commissions in his reported gross income. At the February 25, 1971, meeting petitioner was also asked about bank accounts he maintained during the investigated years. He stated that he had only one account, the personal account at Michigan Avenue National Bank. Throughout the course of the investigation, petitioner never revealed the existence of the Chemical account. Finally, at this same interview, petitioner indicated that he failed to file his returns for 1967, 1968, and 1969 because during each filing period he had a heart attack and believed he was going to die; and as a result, he did not care about anything, particularly filing income tax returns. *100 He stated that it was not until his last attack that the doctor convinced him that he could lead a normal life with medication. Petitioner's only hospitalizations during the years 1965 through 1970 were as follows: Hospital
Hospitalization
St. Francis
7/9/65 to 8/23/65
1/11/66 to 2/3/66
8/30/66 to 9/2/66
Michael Reese
1/16/67 to 2/9/67
Passavant Memorial
3/4/70 to 3/24/70
In addition, in 1963, shortly after he assumed employment with National Lead, petitioner suffered a broken back and head injury when a steel beam fell on him. This injury caused petitioner to be hospitalized for approximately eight weeks and forced him off work for a considerable period of time. Petitioner had medical insurance and the bills from St. Francis Hospital in 1965 reflect that this insurance paid almost all of his hospitalization expenses in those years. Petitioner presented absolutely no evidence reflecting the amount of hospitalization expenses that he might have incurred at St. Francis, Michael Reese, or Passavant Memorial. On May 30, 1973, the Federal District Court in the Northern Judicial District of Illinois, Eastern Division, entered a judgment on petitioner's guilty plea to a willful failure to file *101 his 1969 Federal income tax return within the meaning of section 7203, and to a willful subscription to false returns for 1967 and 1968 under section 7206(1) for failure to disclose income from precious metal sales. OPINION Issue 1. 1967 and 1968 Unreported Income
We must decide whether petitioner received sums from sales of precious metal scrap to Simmons Co. in 1967 and 1968 as a seller in his own behalf or merely as a broker.Respondent has determined that petitioner received $ 69,811.43 and $ 6,606.37 in 1967 and 1968, respectively, acting in his own behalf in various sales to Simmons Co. Respondent's determination carries a presumption of correctness and the taxpayer has the burden of proof to overcome this presumption. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
Petitioner attempts to overcome respondent's determination solely by his testimony at trial. Although petitioner admitted he received all the proceeds from the six Simmons Co. checks, he contends that he acted as a broker in all but one sale. [4] *102 Petitioner testified at length in an attempt to establish himself as a broker earning only commissions on his 1967 and 1968 transactions with Simmons Co. With respect to the November 27, 1967, sale of metals to Simmons Co. in which petitioner received four checks totalling $ 69,811.43, petitioner testified that he was acting as a broker for Eugene Offerdahl, an officer of Michigan Avenue National Bank. Petitioner testified that he cashed the first check for $ 31,000 at Offerdahl's bank and subsequently turned over to him $ 28,000 in cash, keeping $ 3,000 for his commission. He testified the second check for $ 19,000 was also cashed at Offerdahl's bank and the entire $ 19,000 in cash was turned over to Offerdahl. He testified the third check for $ 9,811.43 was cashed at the First National Bank of Chicago rather than Michigan Avenue National Bank because Offerdahl was in violation of bank policy in approving the cashing of petitioner's earlier checks. Petitioner testified that after he cashed this check he turned the entire sum over to Offerdahl. Finally, petitioner testified that the fourth check in the *103 amount of $ 10,000 represented further brokerage commission on this transaction and therefore he retained the entire sum.Offerdahl died sometime prior to petitioner's first contact with Revenue Agent Walker on June 1, 1970. At trial, petitioner testified that on April 30, 1968, he made a sale to Simmons Co. on behalf of L. R. Kerns. He further testified that he thereafter paid Kerns $ 4,000 from his own personal checking account thereby leaving him an earned commission on this transaction of $ 311.20. Petitioner did not call Kerns as a witness. Finally, petitioner testified that on July 2, 1968, he made another sale to Simmons Co. receiving $ 2,295.17. He testified that he had Simmons Co. make the purchase order out to suggest the purchase was made from Jack Bayers. He testified, however, that he did not remember who Jack Bayers was even though the address listed on the purchase order for Jack Bayers corresponded to petitioner'spersonal residential address at 400 Randolph Street, Chicago, Illinois. Petitioner did not call Jack Bayers as a witness. On the record before us, we find that petitioner has failed to overcome respondent's determination. Due to the highly contradictory *104 nature of petitioner's testimony and his suspicious conduct, we simply do not find his uncorroborated testimony credible enough to meet his burden. The instances of petitioner's conduct and testimony on which we rely, as set forth more fully in our Findings of Fact, are as follows: (1) failure to file income tax ret1rn for u966; (2) failure to file income tax returns for 1967, 1968, and 1969 until after he was contacted by Revenue Agent Walker; (3) false statement to Walker that 1967 return had been filed; (4) omitted income from the Simmons Co. transactions on his delinquently filed 1967 and 1968 returns; (5) false statement to Walker and Special Agent Accardi that the 1967 and 1968 returns, as filed, accurately reflected all income; (6) false statement to Walker and Accardi that he received only $ 100 to $ 300 per Simmons Co. transaction; (7) admission at trial that he received commission income from the Simmons Co. transactions in excess of $ 13,000; (8) failure to disclose names of his alleged principals to Walker and Accardi; (9) failure to disclose the existence of the Chemical bank account to them; (10) failure to keep any books and records with respect to the Simmons Co. transactions; *105 (11) use of the alias "A. Albert" and "Jack Bayers" in the 1968 Simmons Co. transactions; and (12) failure to call as witnesses any of the principals for whom he allegedly acted. Accordingly, we hold that petitioner is taxable on $ 69,811.43 and $ 6,606.37 in 1967 and 1968, respectively, the entire amount he received in those years from the Simmons Co. transactions. Issue 2. Fraud in 1967, 1968, and 1969
We must determine whether any part of the underpayments of petitioner's income tax for 1967, 1968, and 1969 was due to fraud with intent to evade tax. Since this case was heard, this Court has rendered its opinion in Considine v. Commissioner,68 T.C. 52 (1977), which we believe controls the decision on this issue for the years 1967 and 1968. In Considine, we held that a conviction under section 7206(1) collaterally estopped the taxpayer from denying that his return was not false and fraudulent under section 6653(b). We see no need to repeat our discussion in that case. Suffice it to say that petitioner's conviction under section 7206(1) for 1967 and 1968 collaterally estops him from denying his returns were not false and fraudulent within the meaning of section 6653(b). [5] *106 Petitioner's return for 1969 presents another matter however. Petitioner omitted no income from that return and made no false statements to agents concerning its filing. It is well established that failure to file alone does not constitute fraud within the meaning of section 6653(b). Spies v. United States,317 U.S. 492 (1943); First Trust & Savings Bank of Davenport, Iowa v. United States,206 F. 2d 97, 101 (8th Cir. 1953). Respondent has pointed to no affirmative acts of concealment with respect to 1969, and we find that he has failed to establish fraud for that year. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. Statutory references are to the Internal Revenue Code of 1954, as amended. ↩
2. Since the returns for 1967, 1968 and 1969 were not timely filed, there is no credit for the amount of the tax shown on the return in the calculation of the underpayment subject to the penalty. Sec. 6653(c)(1)↩.
3. Respondent found petitioner liable for the failure to file and negligence penalties under sections 6651(a) and 6653(a), respectively, for the year 1966. Petitioner has the burden of proof to overcome these determinations through a showing of reasonable cause for failure to file and error in imposition of the negligence penalty. Welch v. Helvering,290 U.S. 111, 115 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure; sec. 301.6651-1(c)(1), Proced. & Admin. Regs.; Courtney v. Commissioner,28 T.C. 658, 669↩ (1957). Since petitioner failed to challenge this aspect of respondent's determination, we sustain his finding.
4. Petitioner does not claim broker status with respect to the $ 2,295.17 sale on July 2, 1968, even though he testified that he had Simmons Co. make the purchase order in the name of Jack Bayers.
5. Moreover, the fact that petitioner here pleaded guilty rather than being convicted through a trial is irrelevant. Artic Ice Cream Co. v. Commissioner,43 T.C. 68, 75↩ (1964).