GERALD M. FLEISCHNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fleischner v. Commissioner
Docket No. 5677-81.
United States Tax Court
T.C. Memo 1995-389; 1995 Tax Ct. Memo LEXIS 390; 70 T.C.M. (CCH) 413; August 15, 1995, Filed *390 Decision will be entered under Rule 155. Gerald M. Fleischner, pro se. Steven Roth and Mark Weiner, for respondent. NAMEROFF, Special Trial Judge NAMEROFF
MEMORANDUM OPINION NAMEROFF, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) [1] and Rules 180, 181, and 182. In a notice of deficiency dated December 23, 1980, respondent determined deficiencies and additions to tax in petitioner's Federal income taxes for the taxable years 1970 through 1976 as follows: Additions to Tax
Year
Deficiency
Sec. 6651(a)
Sec. 6653(a)
Sec. 6653(b)
Sec. 6654(a)
1970
$ 743.55
0
0
$ 371.78
$ 23.00
1971
2,245.96
0
0
1,122.98
73.00
1972
5,784.64
0
0
2,892.32
185.00
1973
1,139.00
0
0
3,252.00
45.00
1974
1,874.00
[1]
0
6,661.00
137.00
1975
5,712.54
0
0
0
218.00
1976
3,227.00
807.00
$ 197.00
0
0
*391 In the notice of deficiency, respondent made numerous adjustments to petitioner's delinquently filed returns, which adjustments both increased and decreased taxable income set forth on the delinquent returns. However, for purposes of this case we can summarize the issues to be resolved as follows: (1) Whether petitioner had unreported wages, dividend income, interest income, Schedule C income, and/or income from the sale of call-options during the taxable years 1970 through 1976; (2) whether petitioner is entitled to capital losses, business expenses, and/or itemized deductions in amounts in excess of those allowed by respondent in the notice of deficiency; (3) whether petitioner is liable for the additions to tax for delinquency and negligence for taxable year 1976 and underpayment of estimated tax for the taxable years 1970 through 1975; and (4) whether petitioner is liable for the additions to tax for fraud for the taxable years 1970 through 1974. Petitioner resided in San Diego, California, at the time he filed his petition. For the taxable years 1970 through 1974 petitioner failed to file timely returns, and respondent initiated an investigation into such delinquency. The investigation *392 culminated in a Federal Grand Jury issuing an indictment on April 14, 1976, charging petitioner with willfully and knowingly failing to file his individual income tax returns for the taxable years 1970 through 1974 in violation of section 7203. On May 27, 1976, petitioner pleaded guilty to one count with respect to taxable year 1972. On June 28, 1976, petitioner was sentenced to 1 year probation and 500 hours of community service. The parties were unable to execute a stipulation of facts. However, the parties did agree to stipulate 26 exhibits consisting of various returns filed by petitioner. On June 28, 1976, petitioner filed delinquent Forms 1040 for the taxable years 1970 through 1974. Thereafter on July 22, 1976, petitioner filed amended returns for each of the taxable years 1970 through 1974, and an original return for taxable year 1975. On February 3, 1977, and February 14, 1977, petitioner also filed amended returns for taxable year 1970. All of the returns filed from June 28, 1976, through February 14, 1977 (original and amended), were handwritten by petitioner. On the amended return for taxable year 1970 filed on February 3, 1977, petitioner crossed out the jurat portion *393 of the return, but the amended return filed on February 14, 1977, was identical to the one filed on February 3, 1977, except that the jurat was not crossed out, plus self-employment tax of $ 101 was reported. Finally, on October 13, 1977, and November 14, 1977, additional delinquent returns were filed for each of the taxable years 1970 through 1975. This latter set of returns was typed. In addition, they were prepared and signed by a professional tax return preparer. Also, on November 14, 1977, an original return for 1976 was filed. The notice of deficiency dated December 23, 1980, is based upon the original returns filed. General Background
Petitioner graduated first in his class from high school, graduated in 1956 from Brooklyn Poly Tech with a bachelor's degree, and graduated from the University of Michigan in 1957 with a master's degree in applied mathematics. During the years involved herein, he was engaged, both as an independent contractor and as an employee, in the computer programming business. Petitioner worked for Robert L. Jacobson (Jacobson), an accountant, from 1970 through 1973, initially as an independent contractor and later as an employee. Petitioner developed *394 computer software for Jacobson to assist in the electronic preparation of Forms 1040 and subordinate schedules for Jacobson's clients. Petitioner admitted that he was familiar with the line entries on the Form 1040. During the period 1970 through 1976, petitioner had at least five other software clients, in addition to Jacobson. During the pertinent years, petitioner had a number of stock brokerage accounts with Robert Scott and Co. and with Harris, Upham and Co. Petitioner admitted that his portfolio was one of medium sophistication. When respondent commenced her investigation of petitioner, petitioner transferred some assets at Harris, Upham and Co. into his brother's name. Unreported Income
As indicated earlier, respondent made adjustments to petitioner's tax returns for the taxable years 1970 through 1976 with regard to reported income. Petitioner has not made any attempt to contest the amounts of income determined by respondent. Indeed, many of the amended returns corroborate respondent's determinations. Inasmuch as petitioner has the burden of proof as to the unreported income items, Rule 142(a), we hold that petitioner has not satisfied his burden of proof. We sustain *395 respondent as to the adjustments to income set forth in the notice of deficiency. Business Expenses and Itemized Deductions
Again, respondent has made various adjustments to petitioner's business expenses and itemized deductions claimed in the original returns filed by petitioner. With one exception, petitioner has not made any attempt whatsoever to contest respondent's determinations, notwithstanding the fact that the amended returns filed on November 14, 1977, reflect substantial itemized deductions not allowed by respondent, but which have not been pursued by petitioner herein. Accordingly, we sustain respondent's determinations with respect to business expenses and itemized deductions, except with regard to certain charitable contributions, which respondent concedes to be deductible, subject, of course, to the percentage limitations contained in section 170(b)(1)(A). [2] Contributions exceeding the statutory limitations of section 170(b)(1)(A) may be carried forward to subsequent years. *396 Additions to Tax for Delinquency, Negligence, and Failure to Pay Estimated Tax
Respondent determined that petitioner is liable for additions to tax for negligence and delinquent filing for taxable year 1976. Petitioner has the burden to show that reasonable cause existed for the delinquent filing and that the deficiency was not due to negligence or intentional disregard for rules and regulations. Petitioner has not offered any evidence on these questions. We therefore sustain respondent's determination thereof. Respondent determined additions to tax under section 6654(a) for the taxable years 1970 through 1975. This addition to tax is mandatory unless the taxpayer falls within the very specific exceptions set forth in the statute. Petitioner has not offered any evidence that he falls within any exceptions and, therefore, subject to recomputations under Rule 155 that may reveal that an exception does exist, we sustain respondent's determination as to section 6654(a). Addition to Tax for Fraud
The existence of fraud is a question of fact to be determined from the entire record. Grosshandler v. Commissioner, 75 T.C. 1, 19 (1980); Stratton v. Commissioner, 54 T.C. 255, 284 (1970). *397 Respondent has the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b); Stone v. Commissioner, 56 T.C. 213, 220 (1971). Fraud is never presumed; rather, it must be established by affirmative evidence. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Fraud, however, may be inferred by any conduct, the effect of which would be to mislead or conceal, Spies v. United States, 317 U.S. 492, 499 (1943), or otherwise prevent the collection of taxes, Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), affg. T.C. Memo. 1966-81; or where an entire course of conduct establishes the necessary intent, Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983); Stone v. Commissioner, supra.Fraud may also be proven by circumstantial evidence because direct evidence of the taxpayer's intent is rarely available. Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Stephenson v. Commissioner, 79 T.C. 995, 1006 (1982), *398 affd. 748 F.2d 331 (6th Cir. 1984). For purposes of section 6653(b), fraud means "actual, intentional wrongdoing," Mitchell v. Commissioner, 118 F.2d 308, 310 (5th Cir. 1941), revg. 40 B.T.A. 424 (1939); or the intentional commission of an act or acts for the specific purpose of evading a tax believed to be owing, Webb v. Commissioner, supra; McGee v. Commissioner, 61 T.C. 249, 256 (1973), affd. 519 F.2d 1121 (5th Cir. 1975). We must decide whether respondent has met her burden of proof to establish fraud within the meaning of section 6653(b). Respondent has made two arguments in an attempt to persuade us that the deficiencies were due to fraud: namely, that petitioner willfully failed to file Federal income tax returns for the taxable years 1970 through 1974 and that petitioner omitted substantial amounts of income on the delinquently filed returns. Petitioner failed to file income tax returns for the taxable years 1970 through 1974. However, failure to file returns, without more, does not establish fraud. *399 Kotmair v. Commissioner, 86 T.C. 1253, 1260-1261 (1986); Grosshandler v. Commissioner, supra at 19. Such failure may be considered in connection with other facts in determining the existence or absence of fraud. Cirillo v. Commissioner, 314 F.2d 478, 482 (3d Cir. 1963), affg. in part and revg. in part T.C. Memo. 1961-192; Beaver v. Commissioner, supra at 93; Bennett v. Commissioner, 30 T.C. 114 (1958). The fact that petitioner's failure to file was knowing or willful does not by itself make it fraud. Stoltzfus v. United States, 398 F.2d 1002, 1005 (3d Cir. 1968); Cirillo v. Commissioner, supra; Jones v. Commissioner, 259 F.2d 300 (5th Cir. 1958), revg. 25 T.C. 1100 (1956); First Trust & Sav. Bank v. United States, 206 F.2d 97 (8th Cir. 1953). Petitioner did not submit false withholding certificates to his employer claiming an excessive number *400 of exemptions. Hebrank v. Commissioner, 81 T.C. 640, 642 (1983); Rowlee v. Commissioner, supra at 1125-1126; Stephenson v. Commissioner, supra at 1007. Nor is there any evidence that petitioner made false statements to or failed to cooperate with respondent's agents during the course of their examination, Powell v. Granquist, 252 F.2d 56, 60 (9th Cir. 1958), or that he failed to keep complete and adequate records of his income. Grosshandler v. Commissioner, supra at 20. We note that respondent did not present any testimony in support of her burden of proof. Thus, respondent has failed to show any other of the various indicia or "badges of fraud" including: (1) Inadequate records, (2) implausible or inconsistent explanation of behavior, and (3) concealing assets. Bradford v. Commissioner, supra at 307-308. Petitioner has from time to time espoused tax protester arguments, but every failure-to-file protester case is not automatically converted into a fraud case. Petitioner does acknowledge *401 that he was sympathetic to certain views of tax protester groups espousing philosophies such as the unconstitutionality of the 16th Amendment to the Constitution and the failure of the Code to identify the meaning of the word "dollar". However, petitioner did not affirmatively act to further these philosophies by, for example, filing false Forms W-4 or concealing assets. [3]
There is some suggestion in the record that when respondent commenced her investigation of petitioner, he transferred some assets from a brokerage account into his brother's name. Respondent has not shown which assets were transferred, what their value was, or what their value was in relationship to other assets owned by petitioner. Petitioner's admission that he transferred *402 some assets into his brother's name does not persuade us clearly and convincingly that petitioner was attempting to defraud the United States Government. Respondent's second contention is that the delinquent returns filed by petitioner on June 28, 1976, were fraudulent. We disagree. First, we note that petitioner filed several amended returns over a period of less than 2 years, adding unreported income, and correcting other items on the returns. With a few exceptions, petitioner's amended returns, filed long before respondent mailed the notice of deficiency, correctly reported all income. Those few exceptions are: For 1971, the last amended return failed to report "net dividends" of $ 262.75 and gross business income of $ 10,478; for 1972, gross business income of $ 4,292 was not reported; for 1973, wages were underreported in the original return by $ 7,250, but overreported on the amended return by $ 4,442, while gross business income was overreported on the original return by $ 3,557; for 1974, petitioner failed to report his distributable loss from a partnership in the amount of $ 4,619. In short, while there may have been some underreporting, there was also some overreporting, *403 and we are not persuaded that the underreporting was due to fraud. The preparer was not called as a witness, nor was any evidence submitted as to the nature and type of petitioner's books and records. We infer that some or all of the underreporting may have been due to careless bookkeeping; it has not been shown on this record to be due to fraud. For example, for 1971, respondent determined that petitioner failed to report in the original return business income of $ 12,817.52, which was roughly 40 percent of the gross business income earned that year. However, respondent also determined that petitioner failed to claim a capital loss to which he was entitled, failed to claim interest expense to which he was entitled, and failed to claim certain itemized deductions for medical expenses and taxes. A substantial portion of the adjustment to petitioner's original return for 1972 was due to a recalculation of depreciation allowed with respect to a computer printer. Respondent determined that petitioner was entitled to greater amounts of depreciation in 1970 and 1971, and a lesser amount in 1972. We note that respondent allowed petitioner a loss on the computer printer in 1973 in the amount *404 of $ 12,605.57, which loss apparently had originally been claimed in 1972. Petitioner's treatment of the computer printer for 1970 through 1973 was not shown to be fraudulent. For 1972, respondent determined that petitioner failed to report business income of $ 5,984.59, but we note that for 1973 respondent determined that petitioner overreported business income by $ 3,556.21. We do not know the explanation for these adjustments and, in particular, we do not know whether a portion of the adjustment is attributable to respondent's determination that the proper year for reporting was 1972, and not 1973. In addition, respondent disallowed claimed business expenses on petitioner's 1972 return for lack of substantiation. These adjustments do not constitute clear and convincing evidence of fraud. The net of all of the adjustments to each of petitioner's returns for 1973 and 1974 was negative; i.e., respondent determined that petitioner's taxable income for each of those two years was less than the taxable income shown on the delinquent original returns. The deficiencies for those years arose out of recalculation of the tax based upon income averaging, due to changes to prior years' taxable *405 income amounts. Viewing this record as a whole, we are not persuaded that any of the deficiencies determined by respondent for the taxable years 1970 through 1974 was due to fraud. Accordingly, we conclude that respondent has not satisfied her burden of proof on this issue, and the additions to tax under section 6653(b) in this case are not approved. To reflect respondent's concessions, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. Respondent also determined an overassessment in addition to tax under sec. 6651(a) for 1974 over which we do not have jurisdiction.↩
2. Sec. 170(b)(1)(A) allows a deduction for contributions to a church not to exceed 50 percent of the taxpayer's contribution base. The contribution base is the taxpayer's adjusted gross income without regard to any operating loss carryback. See sec. 170(b)(1)(F).↩
3. Respondent points to a letter petitioner wrote, which was published in the San Diego Evening Tribune on April 10, 1975. The letter suggests that taxpayers assert their Fourth and Fifth Amendment↩ rights in response to an IRS audit. We do not regard this letter as a badge of fraud.